# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-3319

_____

|  |  |  |
|---|---|---|
| Tracy Ragsdale; Warren E. Dupwe, Trustee in Bankruptcy for the Tracy Ragsdale Estate, | * * * * | |
| Appellants, | * * | |
| v. | * * * | Appeal from the United States District Court for the Eastern District of Arkansas. |
| Wolverine Worldwide, Inc., doing business as Frolic Footwear, a foreign corporation doing business in the State of Arkansas, | * * * * * | |
| Appellee. | * | |

_____

Submitted: April 12, 2000
Filed: July 11, 2000

_____

BeforeWOLLMAN, Chief Judge, MAGILL, Circuit Judge, and FRANK,[*] District
Judge.

_____

MAGILL, Circuit Judge.

This appeal considers the validity of certain regulations promulgated by the

_____

[*]THE HONORABLE DONOVAN W. FRANK, United States District Judge for
the District of Minnesota, sitting by designation.

Department of Labor (DOL) under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601, et seq. The appeal arises out of a suit brought by Tracy Ragsdale against Wolverine Worldwide, Inc. (Wolverine) under the FMLA, the American's with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101, et seq, and the Arkansas Civil Rights Act of 1993 (Arkansas Act), Ark. Code Ann. § 16-123-101, et seq, alleging that Wolverine improperly denied her FMLA leave and terminated her in violation of the FMLA, ADA, and Arkansas Act. Ragsdale appeals the district court's[1] grant of summary judgment to Wolverine on her FMLA claim. We affirm the judgment of the district court.

## I. BACKGROUND

The relevant factual background of this case is relatively simple. Ragsdale began her employment with Wolverine on March 17, 1995. She was diagnosed with cancer in February 1996 and requested medical leave from Wolverine on February 21, 1996. Wolverine granted her request, and Ragsdale's leave commenced on that date.

Wolverine's leave policy allowed employees with six months of service to take leave for up to seven months. The leave policy required employees on leave to submit requests for extensions of leave every thirty days. Consistent with that requirement, Ragsdale requested extensions of her leave on March 18, April 22, May 21, June 20, July 22, and August 15 of 1996. Each request for an extension was granted by Wolverine. Wolverine did not, however, notify Ragsdale of her leave eligibility under the FMLA or her right to have leave designated as FMLA leave.

On September 20, 1996, Ragsdale was terminated because she had exhausted her seven months of company provided leave and was unable to return to work. On

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

September 26, 1996, Ragsdale returned to Wolverine and requested additional FMLA leave. She was informed that she had requested and utilized all of her available leave. Ragsdale then requested that she be allowed to return to work on a reduced hour schedule. Wolverine denied her request. Ragsdale's physician released her to work in December of 1996, and she has been actively employed in full-time positions since December 31, 1996. Ragsdale is no longer being treated for cancer and is currently capable of working without restrictions.

On December 22, 1997, Ragsdale filed suit against Wolverine alleging claims under the FMLA, ADA and Arkansas Act. On November 3, 1998, the district court granted summary judgment to Wolverine on Ragsdale's FMLA claim. The court found that the DOL's regulations, which provide that unless the employer prospectively designates company leave as FMLA leave, the twelve week FMLA leave entitlement does not begin to run, are based on an erroneous interpretation of the FMLA and cannot be enforced. The district court also dismissed Ragsdale's ADA and Arkansas Act claims, holding that Ragsdale was not qualified to perform the essential functions of her job at the time of her termination. Subsequently, Ragsdale filed the present appeal.

## II. ANALYSIS

Ragsdale claims that the district court erred in invalidating the DOL's regulations and dismissing her FMLA claim. She claims that because Wolverine never formally designated any of the seven months of company leave as FMLA leave, DOL regulations properly mandate that the clock never began to run on her FMLA leave. Thus, Ragsdale contends that she was denied twelve weeks of FMLA designated leave, and that she remained entitled to be restored to her position through December 1996 when she was able to return to work. Wolverine concedes that it did not formally designate Ragsdale's leave as FMLA-qualifying but argues that the DOL regulations are invalid because they impermissibly expand the scope of rights conferred on

-3-

employees under the FMLA.  We review the district court's grant of summary judgment de novo.  See Sahulka v. Lucent Tech., Inc., 206 F.3d 763, 767 (8th Cir. 2000).

## A.  Chevron Standard of Review

In Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), the Supreme Court explained the analysis that a court must utilize when reviewing agency decisions which apply or interpret a statute that the agency administers.  The Chevron test has two parts.  First, a reviewing court must determine whether congressional intent is clear from the plain language of the statute.  See id. at 842-43.  "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."  K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988) (citation omitted).  When an analysis of the statute reveals a clear congressional intent, an agency interpretation of the statute contrary to that intent is not entitled to deference.  See id.  A court must not defer when it "appears from the statute or legislative history that the accommodation is not one that Congress would have sanctioned."  Chevron, 467 U.S. at 845.  If, however, the language of the statute is ambiguous, and the legislative history reveals no clear congressional intent, a reviewing court must defer to a reasonable agency interpretation of the statutory provision.  See id. at 843.  In all cases, although the  level of deference afforded an agency interpretation may appear high, the court remains the final authority in matters of statutory interpretation and "must reject administrative constructions which are contrary to clear congressional intent."  Id. at 843 n.9.

## B.  Department of Labor Employer Notice Regulations

Subchapter I of the FMLA sets forth the FMLA's substantive provisions.  An

employee is eligible for FMLA leave if she has worked for a covered employer[2] for at least 1,250 hours during the preceding twelve months.  See 29 U.S.C. § 2611(2)(A)(ii). The FMLA provides that an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve-month period for one or more of the following reasons:  (1) the birth of the employee's child, (2) the placement of a child with the employee for adoption or foster care, (3) taking care of certain relatives with "serious health condition[s]," and (4) when the employee herself cannot "perform the functions" of her position because she suffers from a "serious health condition."  See 29 U.S.C. § 2612(a)(1).  After an employee has taken FMLA leave, the employee is entitled to full restoration of her prior position or restoration to an "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1).

The FMLA directs the Secretary of Labor to, inter alia, "prescribe such regulations as are necessary to carry out subchapter I."  29 U.S.C. § 2654.  Although the FMLA does not itself require that the employer designate leave as FMLA leave, the DOL regulations do require such designation.  Seizing on the lack of employer notice provisions in the text of the statute, the DOL has issued a series of regulations requiring that an employer provide an employee with notice that company leave is FMLA leave both in situations where the employee is taking paid leave and where the employee is taking unpaid leave and providing for severe consequences for the failure to give employees such notice.   The DOL has mandated that "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section . . . ."  29 C.F.R. § 825.208(a).  In two separate regulations, the DOL provides that failure to notify an employee that leave taken pursuant to the company leave policy is also

_____

[2]The reach of the FMLA is relatively limited.  It only applies to, among other entities, private-sector employers of fifty or more employees.  See 29 U.S.C. § 2611(4)(A)(i).

designated as FMLA leave will result in the employee still retaining her twelve week FMLA "entitlement." In 29 C.F.R. § 825.208(c), the DOL applies the principle to paid leave under an employer provided leave program, stating:

> If the employer has the requisite knowledge to make a determination that the paid leave is for an FMLA reason at the time the employer either gives notice of the need for leave or commences leave and fails to designate the leave as FMLA leave (and so notify the employee in accordance with paragraph (b)), the employer may not designate leave as FMLA leave retroactively, and may designate only prospectively as of the date of notification to the employee of the designation. In such circumstances, the employee is subject to the full protections of the Act, but none of the absence preceding the notice to the employee of the designation may be counted against the employee's 12-week FMLA leave entitlement.

29 C.F.R. § 208(c). The DOL also applies the principle to unpaid employer provided leave, stating: "[i]f an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement." 29 C.F.R. § 825.700(a).

As stated above, the issue before the court is whether the above-quoted DOL regulations are a permissible interpretation of the FMLA. Recently, several courts have addressed this precise question and have come to differing conclusions, resulting in a split of authority. Compare McGregor v. Autozone, Inc., 180 F.3d 1305 (11th Cir. 1999) (striking down the regulations because they improperly expand the substantive guarantees of the statute); Schloer v. Lucent Tech., Inc., 2000 WL 128698 (D. Md. 2000) (same); Neal v. Children's Habilitation Ctr., 1999 WL 706117 (N.D. Ill. 1999) (same); Donnellan v. New York City Transit Auth., 1999 WL 527901 (S.D.N.Y. 1999) (criticizing the regulations but finding for the employer on narrower ground); with Plant v. Morton Int'l, Inc., 2000 WL 572458 (6th Cir. 2000) (distinguishing between notice requirements for paid as opposed to unpaid leave but appearing to uphold both 29 C.F.R. §§ 825.208(c) and 825.700(a) as valid exercises of regulatory power); Ritchie

v. Grand Casinos of Mississippi, Inc., 49 F.Supp.2d 878 (S.D. Miss. 1999) (holding that the DOL's regulations appropriately "filled the gaps" of the FMLA); Chan v. Loyola Univ. Med. Ctr., 1999 WL 1080372 (N.D. Ill. 1999) (same).

We agree with the Eleventh Circuit that the DOL's regulations improperly "convert[] the statute's minimum of federally-mandated unpaid leave into an entitlement to an additional 12 weeks of leave unless the employer specifically and prospectively notifies the employee that she is using her FMLA leave." McGregor, 180 F.3d at 1308. The FMLA was intended only to set a minimum standard of leave for employers to provide to employees. Under the FMLA, twelve weeks of leave is both the minimum the employer must provide and the maximum that the statute requires. The provisions of the FMLA are noticeably bereft of any purpose to interfere with employer leave policies which grant greater leave rights than the FMLA or to require more generous leave plans than the minimum twelve weeks of unpaid leave mandated by the FMLA. See 29 U.S.C. § 2652(a)("Nothing in this Act or any amendment made by this Act shall be construed to diminish the obligation of an employer to comply with any collective bargaining agreement or any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established under this Act or any amendment made by this Act"); 29 U.S.C. § 2653(b) ("Nothing in this Act or any amendment made by this Act shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act or any amendment made by this Act."); 29 U.S.C. § 2612(d)(2)(B) ("nothing in this subchapter shall require an employer to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave").

The terms of the statute contemplate only that the employer will be required to provide a "total" of twelve weeks of unpaid leave. Entirely absent from the text of the FMLA is any indication that the FMLA was designed to entitle an employee to additional leave under the FMLA when the employer's leave plan already provides for

twelve weeks of FMLA qualifying leave.  See 29 U.S.C. § 2612(a)(1) ("employee shall be entitled to a total of 12 workweeks of leave during any 12-month period") (emphasis supplied); 29 U.S.C. § 2612(d)(1) ("If an employer provides paid leave for fewer than 12 workweeks, the additional weeks of leave necessary to attain the 12 workweeks of leave . . . may be provided without compensation") (emphasis added).

The FMLA does define the relationship between FMLA leave and employer-provided paid leave when an employee takes leave that qualifies as FMLA leave.  It provides:

> An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or medical or sick leave of the employee . . . for any part of the 12-week period of such leave under such subsection, except that nothing in this subchapter shall require an employer to provide paid sick leave or paid medical leave in any situation in which such employer would not normally provide any such paid leave.

29 U.S.C. § 2612(d)(2)(B).  The obvious purpose of § 2612(d)(2)(B) is to ensure that neither an employee nor an employer will be disadvantaged by the existence of the FMLA.  The provision enables the employee to take advantage of *paid* employer-provided leave that the employee would be entitled to regardless of the existence of the FMLA.  The provision also protects the employer; if an employee requests FMLA leave, the employer can require that the employee also use employer-provided leave thereby, if providing at least twelve weeks of leave, saving itself from having to extend more leave than provided for in its leave policy.  The DOL has failed to appreciate and differentiate those circumstances when notice should be required from employers in order to protect employees' substantive FMLA rights from those situations where notice is not necessary to protect FMLA rights.  Rather than simply recognizing that the purpose of § 2612(d)(2)(B) was to disadvantage neither employer nor employee by the existence of the FMLA when the employer already has a sufficient leave policy in

place, the Secretary of Labor has apparently seized upon the "employer may require" provision in § 2612(d)(2)(B) to justify the imposition of a disproportionate penalty in all cases where employers fail to designate leave as FMLA leave.

Other sections of the FMLA strongly support the view that where Congress desired explicit notice provisions with significant consequences for their violation, it provided for them in the text of the statute. In 29 U.S.C. § 2612(e)(1), the statute details notice obligations of employees to employers when the employee requests qualifying leave under the FMLA. See Carter v. Ford Motor Co., 121 F.3d 1146 (8th Cir. 1997) (holding that an employee merely informing the employer that he would be out and did not know when he would return and offering no further information was not adequate notice under the FMLA). In 29 U.S.C. § 2614(b)(1)(A), the FMLA allows an employer to refuse to restore a "highly compensated employee" to his or her former position if holding open the position would cause "substantial and grievous economic injury to the operations of the employer." 29 U.S.C. § 2614(b)(1)(A). In order to do so, however, the employer must give notice to the employee "at the time the employer determines such injury would occur" that the employer does not intend to restore the employee to his or her position. See 29 U.S.C. § 2614(b)(1)(B); see also 29 U.S.C. § 2619 (assessing monetary penalties for employers who do not post notices on the premises of the employer explaining FMLA rights).

Similar to the statutory text, the FMLA's legislative history supports the view that the FMLA was intended only to be a statute that provided a minimum labor standard; an assurance that employers would provide employees with twelve weeks of leave every year. See S. Rep. No. 103-3, at 4 (1993), reprinted in 1993 U.S.C.C.A.N. 3, 6 (stating that the FMLA "accommodates the important societal interest in assisting families, by establishing a minimum standard for leave. The bill is based on the same principle as the child labor laws, the minimum wage, Social Security, the safety and health laws, the pension and welfare benefit laws, and other labor laws that establish minimum standards for employment"); S. Rep. No. 103-3, at 28 (1993), reprinted in

U.S.C.C.A.N. 3, 30 ("Section 102(d) assures that an employee is entitled to the benefits of applicable paid leave, plus any remaining leave time made available by the act on an unpaid basis"). Any other view of the statute would likely upset the careful compromise reached by Congress when it passed the FMLA. See H.R. Rep. No. 135(l), at 37 (1991) ("The amount of time available for leave also reflects a compromise. The leave period was reduced to 12 weeks in response to concerns raised by employers who maintained that it was significantly easier to adjust work schedules or find temporary replacements over the shorter time period. While not ideal from the employees' perspective, a twelve week minimum represents a middle ground between the family needs of workers and an employer's business needs.").

The DOL regulations must be struck down. Although courts must defer to agency expertise, this Court cannot abrogate its mandate as the "final authority on issues of statutory construction" and must "reject administrative constructions which are contrary to clear congressional intent." Chevron, 467 U.S. at 843 n.9. The DOL regulations create rights which the statute clearly does not confer. While the statute only requires the employer to provide twelve weeks of unpaid leave, under the DOL regulations, the employer could be forced to provide much more leave. The FMLA was intended to "balance the demands of the workplace with the needs of families," 29 U.S.C. § 2501(b)(1), "in a manner that accommodates the legitimate interests of employers," 29 U.S.C. § 2601(b)(3). The DOL regulations dispense with any pretense of balancing in favor of rigid and unnecessary regulations that penalize unwary employers.

It should be stressed that the court is not holding that any DOL regulations requiring employers to designate leave as FMLA leave would be invalid. There are various situations in which an employer's failure to give notice may function to interfere with or to deny an employee's substantive FMLA rights. For example, notice could be necessary where the employee claims that the sole reason she exceeded her FMLA leave was due to the employer's failure to notify her that her leave was designated as

FMLA leave and if she had been so notified, she would have returned to work at the end of the twelve weeks. See Longstreth v. Copple, 189 F.R.D. 401 (N.D. Iowa 1999). Also, in some cases where the leave was anticipated, an employer's failure to provide notice that the leave counts against the FMLA entitlement could interfere with the employee's ability to plan and use future FMLA leave.

Although some situations may require employer notice, this case is not one of them. The DOL regulations improperly convert the FMLA into a statute which always provides an additional twelve weeks of leave unless the employer specifically notifies the employee prospectively that she is using her FMLA leave. This is not consistent with the purpose of the FMLA. Congress only intended to mandate a minimum of twelve weeks of leave for employees, it did not intend to construct a trap for unwary employers who already provide for twelve or more weeks of leave for their employees. It is undisputed that Wolverine's employee leave program was far more generous than the baseline established by the FMLA. Under Wolverine's leave program, Ragsdale was allowed a maximum of thirty weeks of company leave, which she exhausted in full. During this time, Wolverine maintained Ragsdale's health insurance benefits, and even exceeded the requirements of the FMLA by paying Ragsdale's insurance premiums for six months. Moreover, Wolverine held Ragsdale's position open for her during the entire thirty weeks of leave.

Ragsdale's medical condition rendered her unable to work for substantially longer than the FMLA twelve-week period. To find that Wolverine's technical violation of the designation regulations functions as a denial of Ragsdale's FMLA rights would be an egregious elevation of form over substance; a result clearly not contemplated by the FMLA. In this case, the regulations directly contradict the statute by increasing the amount of leave that an employer must provide. Consequently, this court must hold 29 C.F.R. § 700(a) invalid insofar as it purports to require an employer to provide more than twelve weeks of leave time.

### III. CONCLUSION

In sum, we affirm the district court's judgment holding that the DOL regulations are not based on a permissible interpretation of the FMLA and that, consequently, Ragsdale's FMLA claim must be dismissed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.