United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-3668

_____

Wardell Carter,                  *

                                *

        Appellant,         *

                                *   Appeal from the United States District

    v.                            *   Court for the Eastern District of

                                *   Missouri.

Ford Motor Co.; David Dunaway,  *

                                *

        Appellees.        *

_____

Submitted: May 21, 1997
Filed: July 28, 1997

_____

Before BEAM, FRIEDMAN,[1] and LOKEN Circuit Judges.

_____

BEAM, Circuit Judge.

Wardell Carter sued Ford Motor Company alleging that in discharging him, Ford violated the Family Medical Leave Act, breached its collective bargaining agreement, intentionally discriminated against him because of his race, and committed various state law torts. The district court[2] granted Ford's motion for summary judgment. Carter appeals and we affirm.

_____

[1]The Honorable Daniel M. Friedman, United States Circuit Judge for the Federal Circuit, sitting by designation.

[2]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

# I. BACKGROUND

Carter began working for Ford Motor Company in 1988. He was a member of the United Auto Workers (UAW) Local 325 and the UAW International, and was covered by the union's collective bargaining agreement with Ford. He was discharged on March 3, 1994.

Plaintiff's last day of work was February 15, 1994. The following day, Stephanie Carter, the plaintiff's wife and also a Ford employee, telephoned the plant's labor relations office (LRO) to inform them that she was sick and that she and her husband were going to be "out" because of family problems. Two days later, Carter's doctor diagnosed him as suffering from anxiety and depression and concluded that he was totally disabled. On February 21, Carter called the LRO himself and reported that he would be out sick. When asked what the problem was, Carter stated that "it was personal." When asked when he would return to work, Carter said that he did not know. On February 25, Carter again called the LRO to inform Ford that he was still sick, but did not request medical leave at that time.

That same day, Carter received a "five-day" letter instructing him to report for work or provide a reason justifying his continued absence within five days from the date of the letter. The letter warned that failure to comply would result in Carter's termination. In response, Carter went to the Ford plant on February 28 and informed the LRO representative that he was requesting sick leave. At this time, the LRO representative gave Carter a form for his attending physician to fill out as soon as possible to explain his need for sick leave. Although Carter's physician completed the form on March 2, Carter did not return the form at that time. Carter blames the delay on the LRO representative's alleged assurances that Carter was covered on medical leave and that, therefore, there was no hurry on the paperwork.

Carter claims that on March 2, Stephanie telephoned the LRO to inform them that she would soon deliver her husband's medical papers substantiating his need for medical leave. Stephanie spoke with David Dunaway who allegedly told her that there was no need to bring in the paperwork as Carter had already been fired. Carter alleged that because of Dunaway's statement, he did not submit proper medical documentation to justify his absence. On March 3, Ford discharged Carter for failing to satisfy the five-day letter that it claims expired at 12:00 p.m. on March 2. Soon thereafter, Carter contacted his Local 325 to begin the grievance process.

The UAW filed a timely grievance to contest Carter's termination. However, Carter's discharge was found to have been proper under the collective bargaining agreement, a section of which provides that seniority will be broken for failure to reply to a five-day letter. The union appealed the denial of Carter's grievance, but later withdrew the appeal without prejudice. Carter was informed of the withdrawal and told to contact his union representative with any questions regarding the disposition. Carter claims Ford fabricated evidence so that the UAW would withdraw his grievance. He also claims that he was never informed of his right to appeal the withdrawal. He concedes, however, that he neither inquired about an appeals process nor appealed within the allotted time.

Carter filed this action,[3] alleging that in discharging him, Ford: (1) violated the Family and Medical Leave Act (FMLA) by terminating him after he requested extended medical leave due to his illness; (2) breached the Ford-UAW collective bargaining agreement in violation of section 301 of the Labor Management Relations Act by not arbitrating his termination in good faith; (3) violated Missouri's service letter statute; and (4) violated 42 U.S.C. § 1981 by terminating him based on his race. Carter also

---

[3]Carter's complaint also alleged numerous causes of action on behalf of his wife. Carter later stipulated to the dismissal of those claims and that dismissal is not before us in this appeal.

alleges that both Ford and Dunaway intentionally inflicted emotional distress upon him and fraudulently or negligently misrepresented facts relating to his termination. The district court granted Ford's motion for summary judgment.[4] Carter appeals.

## II. DISCUSSION

Summary judgment is proper only when no genuine issue of material fact is present and judgment should be awarded to the movant as a matter of law. Yowell v. Combs, 89 F.3d 542, 544 (8th Cir. 1996). We review the entry of summary judgment de novo, giving the nonmoving party the benefit of every reasonable inference drawn from the evidence. Id.

We first address Carter's claims under the FMLA. The FMLA allows covered employees to take medical leave for serious health conditions and protects their right, on their return, to be placed in the same or an equivalent position. 29 U.S.C. §§ 2612(a)(1)(D); 2614(a). FMLA regulations require employees to provide adequate notice to their employers of the need to take leave. See 29 C.F.R. §§ 825.302-.303. In situations where the need for leave unexpectedly arises, the employee is to give notice "as soon as practicable." Id. at § 825.303(a). Generally, this means no more than two days after learning of the need for the leave. Id.

Assuming Carter had a "serious health condition" within the meaning of the act, a doubtful proposition on these facts,[5] he never gave Ford adequate notice of his need

---

[4]The district court found that a genuine issue of material fact existed as to whether Ford violated the Missouri service letter statute. However, because the district court granted summary judgment as to all of Carter's federal claims, it declined to exercise supplemental jurisdiction over this state law claim. This ruling has not been challenged in this appeal.

[5]For instance, despite the diagnosis of total disability, Carter worked at least 7.5 hours each weekday, in an unrelated position at a local clinic, from February 15 to

to take leave due to that illness.  As the facts show, Stephanie told Ford that <u>she</u> was sick and that she and her husband would be out for awhile.  Carter himself later informed the LRO that he would be out, but offered no further information and stated that he did not know when he would return.  This purported notice was neither adequate nor timely under the FMLA.  <u>Id.</u> at §§ 825.302(c); .303.  Therefore, the district court correctly granted summary judgment as to this count.

Carter's claim under section 301 of the Labor Management Relations Act fails because he neither exhausted the available internal grievance procedures nor alleged that the union breached its duty of fair representation.  <u>See</u>, <u>e.g.</u>, <u>DelCostello v. International Bhd. of Teamsters</u>, 462 U.S. 151, 163-64 (1983) (exhaustion requirement can be excused where union breaches its duty of fair representation to member); <u>Vaca v. Sipes</u>, 386 U.S. 171, 186 (1967) (employee must allege both that the employer committed a labor violation and that the union violated its duty of fair representation to prevail in a section 301 suit on own behalf).  Even if Carter had alleged a breach of the union's duty of fair representation,  his claim would still fail on these facts.

A union is granted broad latitude in dealing with its members and its performance is viewed in a highly deferential light.  <u>Air Line Pilots Ass'n, Int'l v. O'Neill</u>, 499 U.S. 65, 78 (1991).  A breach of the duty of fair representation occurs only when a union's conduct is "arbitrary, discriminatory, or in bad faith."  <u>Vaca</u>, 386 U.S. at 190.  A  review of the facts of this case shows that the union did not breach its duty of fair representation.  After his termination, Carter filed a grievance, which was denied by Ford.  The union appealed that denial but later withdrew the appeal.  Carter was informed of the withdrawal and instructed to contact his union representative with any questions about the withdrawal.  He did not contact the representative or appeal the decision on his own, as was his right.  Because his failure to request further action

---

March 22, 1994.  The period between February 15 and March 3 overlaps the time of Carter's absence from, but continued employment with, Ford.

cannot be attributed to the union, Carter's allegations simply do not raise a genuine issue of material fact as to whether the UAW breached its duty of fair representation. Consequently, the district court correctly granted summary judgment as to this claim.

The district court found that Carter's state law tort claims alleging intentional infliction of emotional distress and fraudulent/negligent misrepresentation were preempted by section 301 of the Labor Management Relations Act. Section 301 preempts state law tort claims where the resolution of the claim is substantially dependent upon an analysis of the terms or provisions of a collective bargaining agreement. Livadas v. Bradshaw, 512 U.S. 107, 124-25 (1994); Luecke v. Schnucks Markets, Inc., 85 F.3d 356, 358-59 (8th Cir.), cert. denied, 117 S. Ct. 517 (1996). In this case, a determination on the merits of these state law tort claims would require the court to determine whether Carter's discharge was warranted under the terms of the collective bargaining agreement. Consequently, the district court correctly found that the claims are preempted by section 301. See Johnson v. Anheuser Busch, Inc., 876 F.2d 620, 624 (8th Cir. 1989).

Finally, we agree with the district court's conclusion that Carter's proffered evidence of race discrimination on his 42 U.S.C. § 1981 claim failed to raise the necessary inference that he was terminated on the basis of his race. Accordingly, we affirm as to that issue on the basis of the district court's well-reasoned opinion. See 8th Cir. R. 47B. We have considered the remainder of Carter's arguments and find them to be without merit.

## III. CONCLUSION

Finding no error in the district court's grant of summary judgment in favor of Ford, we affirm.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.