**Jacquelin Mendoza RODRIGUEZ, Plaintiff**

v.

**SMITHFIELD PACKING CO., INC., Defendant.**

**No. RWT 06cv2811.**

United States District Court, D. Maryland.

March 14, 2008.

Alan Lescht, Susan Laiken Kruger, Alan Lescht and Associates PC, Washington, DC, for Plaintiff.

James Phillip Naughton, James Richard Theuer, Scot Allen Lewis Hinshaw, Hunton and Williams LLP, Norfolk, VA, for Defendant.

## MEMORANDUM OPINION

ROGER W. TITUS, District Judge.

On September 20, 2004, Plaintiff Rodriguez felt ill and left work early. All that she told her supervisors at Smithfield Packing Co., Inc. ("Smithfield") was that she was "sick" and that she was leaving for a previously scheduled doctor's appointment. She claims that she called Smithfield the next morning and left a message that she "couldn't go to work at the time being." Rodriguez then missed eight scheduled shifts without contacting her employer directly, asserting that she instead sent messages to her supervisors through co-workers informing them that she was "sick." On September 29, 2004, Smithfield terminated Rodriguez's employment. Rodriguez claims that she was wrongfully discharged by Smithfield, in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2612 *et seq.* Smithfield responds that Rodriguez forfeited any FMLA rights that she might have had because she simply left her job without any notice regarding the nature of her illness or the likely extent of her absence.

Smithfield now moves for summary judgment, arguing that (1) Rodriguez failed to give Smithfield adequate and timely notice of her need for FMLA leave; and, alternatively, (2) her rights were not violated because she was unable to work at the conclusion of the FMLA period.[1] For the reasons that follow, the Court will grant Smithfield's motion.

### I.

Rodriguez was employed by Smithfield at its Landover, Maryland, facility from

---

1. Smithfield also moves for partial summary judgment as to damages, arguing that Rodriguez breached her duty to mitigate damages by failing to diligently seek and maintain suitable employment. *See, e.g., Brady v. Thurston Motor Lines, Inc.,* 753 F.2d 1269, 1273 (4th Cir.1985)(holding that the duty to mitigate damages in a Title VII case requires the wrongfully discharged employee to diligently seek and accept employment that is substantially equivalent to the position from which he was discharged). In light of the Court's conclusion that Smithfield did not violate the FMLA, it is unnecessary to address this issue.

December 1992 until September 29, 2004, when she was discharged, effective September 25. At the time of her discharge, Rodriguez was working as a packing room line leader on the first shift, earning $10.15 per hour. Under the applicable collective bargaining agreement, Rodriguez could be terminated if absent more than one consecutive day without notifying management of the reason for the absence. At her deposition, Rodriguez testified that she had requested and taken FMLA leave on three occasions prior to the incident in question, apparently without any interference by Smithfield.

Before leaving her shift early on September 20, 2004, Rodriguez claims to have informed a supervisor that she was "sick" and that she was leaving for a previously scheduled doctor's appointment, although she did not describe the nature of her illness. She did not tell anyone when she would return and she did not return to work that day. She was then absent from scheduled daily work shifts on September 21 through 25 and September 27 through 29, 2004. Rodriguez asserts that she called in on September 21 at 6:20 a.m. and left a voice mail message saying only that she was still ill and had doctor's appointments. Rodriguez claims to have attempted to call in on September 22 but declined to leave a message. She also states that she relayed messages that she was sick to her supervisors through three co-workers during her absences after September 20. It is undisputed, however, that Rodriguez did not personally attempt to contact Smithfield directly during the period September 23 through September 29. Plaintiff also testified that, during this period, she made phone calls to her doctors and attended medical appointments.

In a declaration accompanying her opposition memorandum, Rodriguez also describes certain leave taken just prior to the September 20–29 period. Specifically, she states that she (1) was absent from work for at least a portion of her shift on September 9, 2004, while she attended a previously scheduled doctor's appointment, (2) left work early on September 13, 2004, due to illness, and (3) missed work on September 14 and 15, 2004. Rodriguez reports that she had informed her supervisor about the September 9 appointment in advance and provided a medical excuse note upon her return to work that day. She also claims that she had told her supervisor on September 13 that she "was not well and ... needed to see a doctor immediately." Rodriguez Decl. ¶ 6. According to Rodriguez, she then called her supervisor on September 14, informing her that she would be absent that day and the next day because she did not feel well and had scheduled medical appointments. She states that, upon returning to work on September 16, she submitted documentation from her medical providers indicating various examinations and treatment, including diagnosis of a suspected peptic ulcer and an endoscopy procedure on September 15, 2004.

On September 30, the day after her termination, Rodriguez appeared at work to meet with the human resources manager, producing an excuse note from her physician. After a union grievance process, Smithfield offered to reinstate Rodriguez to a "vacation relief" position paying $9.15 per hour, with fully restored seniority. Rodriguez refused the offer and eventually obtained employment in a restaurant more than seven months later in May 2005 with pay of $7.50 per hour.[2]

2. In support of its mitigation argument, Smithfield offers evidence showing that, if Rodriguez had accepted the offered position with restored seniority, she would have been promoted to her original position on May 26, 2005, based on her seniority alone.

Rodriguez has stated that she was unemployed until February 2005 due to severe depression and anxiety. She adds in her Declaration that she would have returned to work on October 20, 2004, at the latest, if she had not been terminated. Rodriguez claims that the termination of her employment and loss of health insurance caused a further deterioration in her health condition, causing her additional stress, depression, and anxiety, such that she was unable to actively search for a job until May 2005.

## II.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A material fact is one that 'might affect the outcome of the suit under the governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir.2001)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

To avoid summary judgment on a properly supported motion, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256, 106 S.Ct. 2505. Of course, the Court must view the evidence in the light most favorable to the nonmoving party. *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir.2006). Nevertheless, this Court recognizes the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993)(quoting *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987), and *Celotex Corp.*, 477 U.S. at 323–324, 106 S.Ct. 2548 (internal quotation marks omitted)).

## III.

Before turning to the merits of Smithfield's motion for summary judgment, the Court must address certain evidentiary disputes.

### A.

As a preliminary matter, Smithfield argues that the Court should not consider certain statements made in Rodriguez's Declaration and its accompanying exhibits filed with her opposition brief because they either contradict her prior deposition testimony, are inadmissible hearsay, or are unsworn or unauthenticated. Specifically, Smithfield contests: (1) Rodriguez's summary of a Department of Labor investigation of her case and a document purported to be a report on the same; (2) her statements concerning her actions and medical treatment prior to the September 20 absence; (3) her statements concerning her medical treatment on September 20; (4) her statements concerning her call to work and voicemail message on September 21; (5) various documents relating to her medical evaluation and treatment; (6) her statements reporting what her co-workers told her supervisors during her absence and what her supervisors knew regarding her condition, including signed statements by two co-workers; and (7) her statements that she would have returned to work on October 20, 2004, had her employment not been terminated.

First, the Court has not considered either Rodriguez's own statements sum-

marizing the Department of Labor's findings or an attached document purporting to be a Department of Labor report. Although the Court recognizes the potential admissibility of such a report, *see* Fed. R.Evid. 803(8)(C)(declaring admissible "reports ... of public offices or agencies, setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the courses of information or other circumstances indicate lack of trustworthiness"), the document offered here is unauthenticated and its genuineness is otherwise doubtful as it consists of three typewritten pages containing no indication of its source, the name of the investigator, or even an indication that it was issued by the Department of Labor. In addition, the investigator's recommendations, referenced exhibits, and—as best the Court can tell—the investigator's signature are redacted.[3] Such an unsigned and uncertified document, bearing no indication of its source, provides no evidence to establish that it is what Plaintiff claims it is. *See* Fed.R.Evid. 901 & 902. As such, it would be inadmissible at trial and the Court may not consider it here. *See Maryland High-*

*ways Contractors Ass'n v. Maryland,* 933 F.2d 1246, 1251–52 (4th Cir.1991).

Second, to the extent Rodriguez includes statements in her Declaration based on her personal knowledge, the Court has considered them. Of course, "a party cannot create a triable issue in opposition to summary judgment simply by contradicting his deposition testimony with a subsequent affidavit." *Hernandez v. Trawler Miss Vertie Mae, Inc.,* 187 F.3d 432, 438 (4th Cir.1999). In comparing the statements by Rodriguez in her Declaration to statements made in her deposition, however, it does not appear that the answers are directly contradictory, as were the statements in *Hernandez.* For instance, regarding the Declaration statements about her September 9–15 absences, it is plausible that Rodriguez interpreted the scope of the deposition questions as applying only to her September 20–29 absences.[4] Additionally, although it appears that Plaintiff has reported some medical treatment not included in her answers to interrogatories, the Court has considered these only to the extent that such statements relate to the question of notice and her ability to work at the end of the FMLA period.[5]

---

3. Even if admissible, the report would not create a genuine issue of material fact such that Plaintiff could avoid summary judgment. The report merely repeats facts that Plaintiff has alleged in the instant case, often without noting the evidentiary source of such findings, and there is no indication that such evidence is unavailable to the Court here. Moreover, after a brief review of the factual allegations, the report concludes in cursory fashion that Defendant violated the FMLA's regulations. Such conclusions, citing factual allegations already before the Court, are unhelpful in resolving the questions presented. *See Goldberg v. B. Green & Co.,* 836 F.2d 845, 848 (4th Cir.1988)(finding that an EEOC report's probable cause finding of discrimination was "not sufficiently probative to create a genuine issue of material fact about [the employer's] intent to discriminate on the basis of age [because it] merely repeats facts which [the

plaintiff] himself alleges elsewhere ... and then states in conclusory fashion that those facts reflect age discrimination").

4. In another instance, Defendant inaccurately characterizes Plaintiff's deposition testimony as stating that "the only thing her supervisors knew of her condition was what her co-workers told them after September 20, 2004." Def. Reply at 6–7. Neither the question nor the answer, however, in any way limits Plaintiff's statement to the "only" thing her supervisors knew. Rather, Plaintiff asserts her belief that her supervisors knew she was "in very bad shape," as her co-workers were allegedly telling them.

5. The Court might consider the admissibility of such evidence differently if the actual existence—rather than notice—of a "serious

■ More problematic, however, are the various medical documents attached to Rodriguez's Declaration and co-worker statements related by her and contained in Exhibit 13 to the Declaration. None of the attached documents has been authenticated by the declarants through, for example, an accompanying affidavit. Because such documents would not be admissible at trial, *see* Fed.R.Evid. 901, the Court may not consider them in evaluating Defendant's motion for summary judgment.[6] *Maryland Highways Contractors Ass'n,* 933 F.2d at 1251–52.

### B.

The Family and Medical Leave Act is important social welfare legislation. It is intended "to balance the demands of the workplace with the needs of employees to take leave for eligible medical conditions and compelling family reasons." *Hukill v. Auto Care, Inc.,* 192 F.3d 437, 441 (4th Cir.1999)(citing 29 U.S.C. § 2601(b)). The essential thrust of the law is not wage continuation, but rather job protection. Wage continuation plans are designed to protect against the economic consequences of any illness, no matter how brief or relatively insignificant. The FMLA, on the other hand, protects against loss of a job—but not income—resulting from absence from work for, inter alia, a serious

health condition that renders the employee unable to perform the functions of the employee's position. 29 U.S.C. § 2612(a)(1)(D).[7] When the FMLA applies, an eligible employee is entitled to a total of twelve workweeks of leave during any twelve-month period and, upon return to work, restoration to the position held when the leave commenced or to an equivalent position. 29 U.S.C. § 2614(a)(1)(A)-(B).

There are important requirements that must be met in order to qualify for the protections of the Act. Where a serious health condition is foreseeable, the employee is required to make a reasonable effort to schedule treatment "so as not to disrupt unduly the operations of the employer." 29 U.S.C. § 2612(e)(2)(A). The employee is also required to provide the employer not less than thirty days notice before the leave is to begin except that, if the date of the treatment requires leave to begin in less than thirty days, the employee must provide such notice as soon as is practicable. 29 U.S.C. § 2612(e)(2)(B).

■ Wage continuation plans may provide coverage for self-diagnosed conditions such as colds or minor aches and pains, but the important protections of the FMLA require more. The core requirements for triggering an employer's obligations are a *serious health condition* and

---

health condition" under the statute were in contention and the documents were offered to prove the truth of the matters asserted therein. As it stands, it does not appear that Defendant challenges such a finding at this stage.

6. Such attached documents also violate Federal Rule of Civil Procedure 56(e), which requires that a party attach to an affidavit "[s]worn or certified copies of all papers or parts thereof referred to [therein]."

7. As discussed *infra,* the FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition

that involves[:] (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). The regulations further define "continuing treatment by a health care provider" as "[a] period of incapacity ... of more than three consecutive calendar days ... that also involves: (A) Treatment two or more times by a health care provider ... or (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.114(a)(2)(i).

*adequate communication,* meaning a timely communication sufficient to put an employer on notice that the protections of the Act may apply. *See* 29 U.S.C. § 2612(a)(1)(D), (e); 29 C.F.R. §§ 825.302–.303. When timely and adequate communication is not given, the protections of the Act do not apply, even if the employee in fact has a serious health condition. *See, e.g., Collins v. NTN–Bower Corp.,* 272 F.3d 1006, 1008 (7th Cir.2001)(noting that "notice is essential" even assuming that the employee was suffering from a serious health condition).

■ To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled. *Edgar v. JAC Prods., Inc.,* 443 F.3d 501, 507 (6th Cir.2006); *see* 29 U.S.C. § 2615(a)(1)(prohibiting an employer from interfering with an employee's FMLA rights).

*i. Adequacy and Timeliness of Notice*

■ Smithfield argues that Rodriguez's notice regarding her absences after September 20 was both inadequate and untimely under the FMLA. In measuring adequacy of notice under the Department of Labor's promulgated regulations,[8] the Court must assess whether Plaintiff informed Defendant of (1) such facts as to make the employer aware that the employee needed leave due to a *serious health condition;* and (2) "the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c).[9] Where the need for leave was not foreseeable, this notice should be given "as soon as practicable under the facts and circumstances of the particular case," with an expectation that notice will occur "within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." 29 C.F.R. § 825.303(a).

■■ In evaluating the timing of such notice, the Court must consider the requirements of the employer. 29 C.F.R. § 825.302(d)(providing that "an employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave"); *Gilliam v. United Parcel Service, Inc.,* 233 F.3d 969, 972 (7th Cir.2000)(finding proper termination where employee failed to call in accordance with a collective bargaining agreement). When the need for FMLA is unforeseen, the Court's analysis of the adequacy of notice does not occur in a factual vacuum. Rather, the regulations recognize that the circumstances of unforeseen leave sometimes may require the employer to follow up to determine whether FMLA leave is necessary:

8. The Fourth Circuit has recognized that the Secretary of Labor possesses authority to promulgate regulations implementing the FMLA under 29 U.S.C. § 2654 and has stated that it "defer[s] to the Secretary's interpretation of the FMLA, as expressed in the interim regulations." *Rhoads v. F.D.I.C.,* 257 F.3d 373, 382 n. 7 (4th Cir.2001). Neither party here has challenged the validity of the relevant regulations.

9. Although § 825.302 relates only to *foreseeable* leave, with § 825.303 specifically addressing unforeseen leave, the " 'substance and other particulars of [a § 825.303(b) notice] must conform to § 825.302 ... and only the *timing* of its delivery is affected by § 825.303.' " *Peeples v. Coastal Office Prods., Inc.,* 203 F.Supp.2d 432, 448–49 (D.Md.2002)(quoting *Collins v. NTN–Bower Corp.,* 272 F.3d 1006, 1008 (7th Cir.2001)).

The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means. The employee or spokesperson will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

29 C.F.R. § 825.303(b). So, too, in the context of foreseeable leave, "[t]he employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c).

Smithfield argues that Rodriguez's notice, consisting of (1) her indication on September 20 that she was going to the doctor, (2) her September 21 message that she was not coming in; and (3) her subsequent message or messages through co-workers that she was sick, were inadequate under the FMLA, adding that Plaintiff's notice and documentation provided on September 30 was untimely, especially in light of the company's "no call/no show" policy. In so arguing, Smithfield urges the Court to adopt principles developed in the Fifth, Seventh, and Eighth Circuit Courts when presented with what it argues are analogous facts.[10]

In *Carter v. Ford Motor Co.*, 121 F.3d 1146 (8th Cir.1997), for instance, the employee told his employer on different occasions during his absence from February 16 through March 3, 2004, that (1) he would be "out" due to family problems; (2) when asked "what the problem was" and when he would return to work, he replied he would be out sick due to a personal problem and did not know when he would return, and; (3) later, he was still sick. *Id.* at 1147. Upon receiving a letter from his employer "instructing him to report for work or provide a reason justifying his continued absence within five days" and warning that a failure to respond would result in termination, the employee went to his workplace three days later to request sick leave. *Id.* Given a form for his doctor and told to return it as soon as possible, the plaintiff instead did not return the paper for three more days and was terminated. *Id.* The Eighth Circuit upheld summary judgment in favor of the employer, concluding that notice was "neither adequate nor timely." *Id.* at 1148.

In *Satterfield v. Wal–Mart Stores, Inc.*, 135 F.3d 973 (5th Cir.1998), the employee's mother (1) delivered a note to her daughter's employer on June 16, 1995, the first day of her absence, stating that her daughter would be absent that day because she "was having a lot of pain in her side," and (2) informed the store manager that her daughter was sick but did not know what was wrong with her. *Id.* at 980. Citing three unexcused absences in the prior

---

**10.** Smithfield also urges the Court to consider the fact that Rodriguez had previously taken FMLA leave on at least three occasions, arguing that this prior leave demonstrates familiarity with the company's attendance policy. *See Satterfield v. Wal–Mart Stores, Inc.*, 135 F.3d 973, 978 (5th Cir.1998)(recognizing that "the employee's history and her knowledge, as well as her utilization, of [the employer's] rules and procedures concerning leave and absenteeism provide a backdrop for determin-

ing whether she gave sufficient FMLA-notice"). Although relevant, this argument ultimately contributes little to its motion because, if construed in the light most favorable to Rodriguez, it shows only that she happened to have complied with the notice requirements or that Smithfield waived them, and not necessarily that Rodriguez was familiar with the requirements of notice, especially when it is not clear if the prior instances involved unforeseen leave.

three weeks, the store manager decided to discharge Satterfield the same day and did so three days later. *Id.* In overturning a jury verdict for Satterfield, the Fifth Circuit held that her notice was inadequate "'to reasonably apprise [Wal–Mart] of [Satterfield's] request to take time off for a serious health condition' within the meaning of the FMLA." *Id.* at 980 (quoting *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 764 (5th Cir.1995)). The court explained:

> Requiring an employer to undertake to investigate whether FMLA-leave is appropriate each time an employee [is absent under such circumstances] is quite inconsistent with the purposes of the FMLA, because it is not necessary for the protection of employees who suffer from "serious health conditions", and would be unduly burdensome to employers, to say the least.

*Id.* at 981 (citing 29 U.S.C. § 2601(a)(4), (b)(3)).

Most recently, in *Phillips v. Quebecor World RAI Inc.,* 450 F.3d 308 (7th Cir. 2006), the employee had explained that she was sick and submitted a form to her employer indicating that she had been seen at a health center. *Id.* at 311–12. The court held that such notice, without any mention of the nature of her illness, "did not place the employer on notice of a probable basis for FMLA leave" and, therefore, did not trigger a duty on the part of the employer to inquire further. *Id.* at 312 (internal quotation marks omitted). Recognizing that an employee is not expressly required to assert FMLA rights, the *Phillips* Court nevertheless reasoned that "[r]equiring employers to determine whether leave is covered by the FMLA every time an employee was absent because of sickness would impose 'a substantial and largely wasted investigative burden on employers.'" *Id.* at 311–12 (quoting

*Aubuchon v. Knauf Fiberglass, GmbH,* 359 F.3d at 953 (7th Cir.2004)).

 Even without excluding the challenged evidence regarding Rodriguez's absences prior to September 20, Smithfield is entitled to summary judgment due to Rodriguez's failure to provide adequate and timely notice of the need for FMLA leave. Although an employee need not expressly assert FMLA rights, "employers still are entitled to the sort of notice that will inform them not only that the FMLA may apply but also when a given employee will return to work." *Collins,* 272 F.3d at 1008. "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a *serious health condition.*" *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758 (5th Cir.1995)(emphasis added); *see Brenneman v. MedCentral Health Sys.,* 366 F.3d 412, 421 (6th Cir.2004)(requiring that notice be "reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered him unable to perform his job"), *cert. denied,* 543 U.S. 1146, 125 S.Ct. 1300, 161 L.Ed.2d 107 (2005). Without further details of the specific nature of an employee's illness, however, information merely indicating that an employee is "sick" is insufficient to put an employer on notice that FMLA leave may be needed. *Collins,* 272 F.3d at 1008; *see also Slaughter v. Am. Bldg. Maint.,* 64 F.Supp.2d 319, 328 (S.D.N.Y.1999)(holding that employee's notice that he was "sick" was insufficient, even assuming employer knew of prior back troubles).

 Not surprisingly, Rodriguez relies heavily on Smithfield's purported knowledge of her medical treatment and diagnosis of a suspected peptic ulcer in the days prior to her September 20–29 absences, arguing that Smithfield had a duty to follow up with Rodriguez to see if her ab-

sence qualified for FMLA leave. While the Department of Labor regulations state that "[t]he employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken," 29 C.F.R. § 825.302(c), and that the "employer will be expected to obtain any additional required information," 29 C.F.R. § 825.303(b), the Court does not read this obligation as a safe harbor for employees who tell their employers merely that they are sick without further explanation, followed by numerous days of consec- utive absences.[11] Indeed, the obligation of further inquiry is only triggered after the employee communicates, as soon as practicable, "at least verbal notice sufficient to make the employer aware that the employee needs *FMLA-qualifying* leave."[12] *Id.* (emphasis added). Reading these sections together and in their entirety, therefore, the Court concludes that an employer's duty of further inquiry is not triggered unless the employer, under the circumstances, could "reasonably be expected to conclude [the plaintiff's] absence might have qualified for treatment under the FMLA."[13] *Gay v. Gilman Paper Co.,* 125

**11.** On this point, Plaintiff's reliance on *Plant v. Morton International, Inc.,* 212 F.3d 929 (6th Cir.2000), is misplaced. Plaintiff cites *Plant* for the proposition that "[t]he FMLA regulations are clear that if the employer feels that it does not have sufficient information to determine whether an employee's leave is FMLA qualifying, the employer should inquire further of the employee to ascertain whether the leave is potentially FMLA-qualifying." Plt. Opp. at 9. A closer reading of that case, however, shows that the cited passage is inapplicable to the situation before the Court. Specifically, the passage in *Plant* stating Plaintiff's offered proposition is actually referring to and quoting 29 C.F.R. § 825.208(a), *see* 212 F.3d at 935, a regulation addressing "Under what circumstances may an employer designate leave, paid or unpaid, as FMLA leave and, as a result, count it against the employee's total FMLA leave entitlement." As is clear from the regulation and the issue presented in *Plant* itself, section 825.208 addresses the steps an employer must take before designating leave taken by an employee as FMLA-qualifying and, thereby, count it against an employee's twelve-week allotment. As such, section 825.208 has a materially different purpose than section 825.303, which specifically discusses "the requirements for an employee to furnish notice to an employer where the need for FMLA leave is not foreseeable." Without specific direction to do so, the Court will not read requirements from elsewhere in the regulations when a regulation precisely on point has been promulgated.

**12.** While section 825.302 purports to address foreseeable leave while section 825.303 deals

with situations in which advance notice is not possible, the Court does not read the absence of the term "FMLA-qualifying" in section 825.303 as excusing the employee from giving proper notice of the reasons for leave if advance notice is not possible. Rather, as the Seventh Circuit has explained, section 825.302 deals with the content of notice generally, while section 825.303 states an exception to the normal timing rule of section 825.302. "On this understanding the substance and other particulars of notice must conform to § 825.302, and only the timing of its delivery is affected by § 825.303." *Id.*

In addition, the fact that such notice of the need for "FMLA-qualifying leave" must convey something more than just that the employee is "sick" is evident by section 825.302(c)'s illustration that such notice is provided when, for example, an employee notifies the employer that "leave is needed *for an expected birth or adoption.*" (Emphasis added.)

**13.** Moreover, the Court finds the characterization of section 825.303(c) presented in *Bachelder v. Am. W. Airlines, Inc.,* 259 F.3d 1112, 1131 (9th Cir.2001), to be less helpful. There, the Ninth Circuit stated that "[e]mployees need only notify their employers that they will be absent under circumstances which indicate that the FMLA might apply," going on to summarize that "the employer is responsible, having been notified of the reason for an employee's absence, for being aware that the absence may qualify for FMLA protection." Although the first part of this

F.3d 1432 (11th Cir.1997); *see also Phillips,* 450 F.3d at 312 (requiring that the employee to provide "a probable basis for FMLA leave" before triggering an employer's duty of inquiry). To read section 825.302(c) as requiring more of the employer would render the modifier "FMLA-qualifying" a nullity.

Here, as such, the Court must determine whether Smithfield could have reasonably been expected to conclude that Plaintiff's absence from September 20 through 29 was due to a "serious health condition" and, therefore, might have qualified for treatment under the FMLA. A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves[:] (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11); *see also* 29 C.F.R. § 825.114(a). The regulations further define "continuing treatment by a health care provider" as,

> [a] period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (A) Treatment two or

more times by a health care provider … or (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2)(i). In sum, then, a serious health condition not involving an overnight stay in a healthcare facility involves (1) an illness, injury, impairment, or physical or mental condition (2) resulting in a period of incapacity for more than three consecutive calendar days and (3) involving either (a) treatment two or more times by a health care provider or (b) treatment by a healthcare provider on one occasion which results in a regimen of continuing treatment. *See Price v. Marathon Cheese Corp.,* 119 F.3d 330, 335 (5th Cir.1997).

In this case, the most that Smithfield knew prior to Rodriguez's September 20 absence was that (1) Rodriguez left work temporarily on September 9, 2004, for a previously scheduled doctor's appointment, later documented as related to Rodriguez's feelings of "shortness of breath, nasal congestion and ear pain that had lasted for three days," Rodriguez Decl. ¶ 5; (2) she reported to work on September 13, but then left early because she was "not well and needed to see a doctor immediately" and was then seen both at an emergency room [14]——which diagnosed her with a sus-

---

formulation is roughly equivalent to the standard in *Gay,* the additional comment imposing responsibility on the employer for being aware of the possibility of FMLA protection any time that an employee notifies it of "the reason for an employee's absence" could be construed to require an employer to inquire further any time that an employee merely calls in sick (i.e., notifies the employer of "the reason" that he or she needs to be absent). The Court agrees with the Fifth Circuit, *see Satterfield,* 135 F.3d at 980, and Seventh Circuit, *Phillips,* 450 F.3d at 311–12, that imposing such an investigative burden on employ-

ers in every case where an employee states that he or she needs to be absent due to illness would be unduly burdensome and wasteful in light of the purpose of the FMLA in balancing the demands of the workplace with the protections afforded to employees with serious health conditions.

**14.** The Court lends no particular weight to the fact that Plaintiff elected to seek treatment at an emergency facility. Absent additional circumstances indicating a serious health condition, such an election by itself gives no indication of the seriousness of her condition

pected peptic ulcer and referred her for further evaluation—and later that day at a non-emergency medical center, where Rodriguez complained of "nausea, epigastric burning, and a burning sensation all over my body that had lasted for two days," *id.* ¶ 6; (3) she called in on September 14 and informed her supervisor that she would be absent that day and September 15 because she "did not feel well" and had scheduled medical appointments and, furthermore, was examined that day by another doctor at an endoscopy center; (4) she underwent an endoscopy on September 15, which diagnosed "moderate to severe, acute and chronic gastritis reflux esophagitis, moderate to severe, acute and chronic gastritis, and axial type Hiatal hernia," *id.* at ¶ 8; and (5) Rodriguez was fully able to work and did so on September 16, 17, 18 and 19.

▮ As an initial matter, the Court finds that Smithfield could not have reasonably been expected to conclude as of September 16 that Rodriguez might be suffering from a serious health condition and, therefore, might have qualified for FMLA leave. During this first period

from September 9 through September 20, Rodriguez was incapacitated and unable to work for *fewer* than—not more than— three consecutive calendar days, having left work early on September 13 and then missing work the following two days. Whether or not Rodriguez was examined or treated multiple times during this period, the regulations are clear that, absent inpatient care, an employee must have suffered a period of incapacity of "more than three consecutive calendar days" to qualify as suffering from a serious health condition. 29 C.F.R. § 825.114(a)(2)(i); *see Murray v. Red Kap Indus., Inc.*, 124 F.3d 695, 698 (5th Cir.1997)(requiring a period of incapacity of at least four consecutive days to demonstrate a serious health condition involving continuing treatment). Because Smithfield knew that Rodriguez was able to work on September 16, after missing fewer than three consecutive calendar days of work—information that clearly places her outside the definition of "serious health condition"—it could not reasonably be expected to conclude that she might have been suffering from a serious medical condition as that term is defined by law.[15]

other than that she herself believed that she needed immediate medical care. What is more important is whether the resulting medical diagnosis was for a serious health condition and whether that diagnosis was communicated to the employer.

**15.** The Court also observes that the record before it contains no other evidence sufficient to lead an employer to reasonably conclude that Rodriguez might have been suffering from a serious medical condition prior to September 20. First, in attempting to give guidance to employers, the Department of Labor has stated that "[o]rdinarily, unless complications arise, the common cold, the flue, ear aches, upset stomach, minor ulcers, headaches other than migraine ... are examples of conditions that do not meet the definition of a serious health condition." 29 C.F.R. § 825.114(c). Aside from being treated for symptoms consistent with a common cold or

seasonal allergies on September 9, Rodriguez adds that she was diagnosed with a suspected peptic ulcer and then with "moderate to severe, acute and chronic gastritis reflux esophagitis, moderate to severe, acute and chronic gastritis at the gastric body, and axial type Hiatal hernia." Rodriguez Decl. ¶ 8. Such symptoms would appear to fall squarely within the exclusions of section 825.114(c). Moreover, even if it such diagnoses were relevant to determining whether an employee might be suffering from a "serious health condition"—it appearing from the statute and regulations that, in fact, they are not—Rodriguez's offer of such technical medical terms without accompanying medical opinions regarding the effects that such conditions might have on her ability to perform her job in the future leaves the Court in much the same position that Smithfield must have been in on September 16: willing to excuse Rodrdiguez

Having concluded that Smithfield could not have reasonably concluded that Plaintiff was suffering from a serious health condition as of September 16, the remaining question is substantially easier to decide: was Plaintiff's notice regarding her absences on September 20 through 29 otherwise adequate and timely under the FMLA? On this issue, *Carter, Satterfield,* and *Ford* are all instructive. Although the Court recognizes that all three cases may be factually distinguishable to a certain extent, all are nevertheless persuasive in standing for the proposition that an employee must given some level of detail regarding the nature of the illness and the likely duration of the absence such that the employer is able to reasonably conclude that the absence may qualify as FMLA leave. *See Carter,* 121 F.3d at 1147–48; *Satterfield,* 135 F.3d at 980; *Phillips,* 450 F.3d at 311–12. Without further details regarding the nature of an employee's illness, information merely indicating that an employee is "sick" is insufficient to put an employer on notice that FMLA leave may be needed. *Collins v. NTN–Bower Corp.,* 272 F.3d 1006, 1008.

Here, after viewing the admissible evidence in the light most favorable to Plaintiff, the Court finds for purposes of summary judgment that, in addition to the

information reviewed above regarding Plaintiff's absences on September 9, 13, 14, and 15, (1) Rodriguez informed her supervisor on September 20 only that she was "sick" and going to a previously scheduled doctor's appointment about which the supervisor had already been notified; (2) Rodriguez called and left a message on September 21 stating that she was "still sick" and "would not be coming into work for the time being"; and (3) Rodriguez's co-workers told her supervisors that she was "very ill" on each day during her absences from September 22–29. At best, this information could have led Defendant to conclude that Plaintiff was apparently ill with some unknown malady that may or may not have been related to her prior illness,[16] but with no basis either to conclude that the illness might be a serious health condition or to forecast how long she would be out of work. *See Peeples v. Coastal Office Products, Inc.,* 203 F.Supp.2d 432 (D.Md.2002)(holding an employee's FMLA notice inadequate and summary judgment in favor of the employer appropriate where the employee "essentially report[ed] that he needed some unknown quantum of time off, to permit some unknown medication to take effect to deal with some unknown condition"). Es-

---

from work for her previous absences on September 13–15 but also assuming that her medical condition was under control and that she was willing and able to resume her job on a daily basis without hindrance. This assumption was borne out on September 16, 17, 18, and 19, when Rodriguez reported to work and performed her scheduled duties with no apparent problems.

16. This case is unlike certain cases in which courts have placed a duty on the employer to investigate where, despite the employee's failure to explain the circumstances of a particular absence, the employer had been well aware of the employee's preexisting and ongoing *serious health condition* and that such condition would likely necessitate ongoing

treatment and additional absences. *See, e.g., Cooper v. Fulton County,* 458 F.3d 1282 (11th Cir.2006)(distinguishing *Gay* and holding that notice that employee was leaving due to illness, blurred vision, extreme headaches, and passing out was sufficient where employer was already aware of employee's history of medical problems and had been prepared to place him on FMLA leave); *Miller v. GB Sales & Serv., Inc.,* 275 F.Supp.2d 823, 829 (E.D.Mich.2003)(finding that employer's knowledge of employee's serious health condition placed the burden on it to inquire further whenever the employee called in sick for medical reasons to determine if those reasons were FMLA-qualifying).

pecially given Smithfield's no-call/no-show policy, which the Court must consider, 29 C.F.R. § 825.302(d); *Gilliam v. United Parcel Service, Inc.*, 233 F.3d 969, 972 (7th Cir.2000), Plaintiff's failure to contact Defendant to discuss the circumstances of her absence is wholly inadequate as a matter of law.[17] As such, summary judgment will be entered for Smithfield.

### ii. Inability to Work During FMLA–Protected Period

■ Under the applicable regulations, an employee returning from FMLA leave has no right to restoration to her prior or an equivalent position where the person is "unable to perform an essential function of the position because of ... the continuation of a serious health condition." 29 C.F.R. § 825.200(a). Such an inability to work at the end of the twelve-week period bars relief because any prior violation caused no harm. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 513 (6th Cir.2006)(affirming grant of summary judgment because plaintiff was unable to work at the conclusion of the twelve-week FMLA period). "The right to reinstatement guaranteed by [the FMLA] is the linchpin of the entitlement theory because 'the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation [that] an employee will return to work after the leave ends.'" *Id.* at 507 (quoting

*Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 978 (5th Cir.2005)).

Smithfield argues that Rodriguez's interference claim is barred because she admittedly claims to have been unable to work until February 2005, more than eighteen weeks after her last day of work on September 20, 2004, and well after the expiration of the protected twelve-week period. *See* 29 C.F.R. § 825.200(a)(12–week limit). As support for this contention, Smithfield cites Rodriguez's statements that (1) she "was unemployed from September 30, 2004, until February 2005 because I was suffering from severe depression and anxiety," Pl.'s Inter. Ans. No. 10, (2) she could not go out and "kept in bed" from September through December 2004, Rodriguez Dep. p. 165, and (3) she was unable to look for work for "[s]ome months" after returning from Mexico in January 2005 due to feeling badly, Rodriguez Dep. p. 132.

Rodriguez's response is that she could have returned to work as early as October 7, 2004, but did not do so because her termination and the offer of a lower-paying position made her condition worsen, a contention unsupported by any medical documentation. Such an argument, under the evidence presented, is wholly unconvincing.[18] Rodriguez does not challenge the

---

**17.** The Court also finds that there is no evidence sufficient for a jury to reasonably conclude that Rodriguez was incapable of informing Smithfield of the nature of her illness or the likely duration of her absence during the period from September 21 through September 29. Despite Plaintiff's arguments to the contrary, when pressed at the hearing, her counsel was unable to point to any medical evidence indicating that Rodriguez's condition prevented her from calling in to speak with her supervisor. Thus, there is no evidence, viewed in the light most favorable to Rodriguez, that would support a finding that she contacted Smithfield "as soon as practica-

ble under the facts and circumstances of the particular case." *See* 29 C.F.R. § 825.303(a).

**18.** The argument may also be irrelevant. The *Edgar* Court interpreted the relevant regulations to mean that the cause of the ailment that prevented the employee from returning to work does not change the analysis: "In sum, the FMLA ... is concerned not with how a serious physical or medical ailment occurred, but with whether that ailment precluded the employee from performing an essential function of his or her job at the end of the leave period." 443 F.3d at 516 (citing 29 C.F.R. § 825.214(b)). Other than her own

legal premise offered by Smithfield or the fact that she could not work at the end of the twelve-week period, instead pointing only to the fact that she participated in the union grievance process at the time and to a doctor's progress note stating that "[s]he can restart work." Rodriguez Decl. Ex. 9. As such, the Court finds that there is insufficient evidence upon which a jury could reasonably rely to find that Rodriguez's inability to work was due to her termination and not, instead, due to her previously existing condition. Although Rodgriguez's notice concerning her need for FMLA leave was inadequate, as explained above, the Court alternatively holds that any violation that may have occurred caused no harm, as Rodriguez was unable to work at the end of the twelve-week leave period.

## IV.

For the foregoing reasons, the Court will grant Smithfield's motion for summary judgment by separate order.

self-serving statement, there is no competent evidence before the Court demonstrating that the Plaintiff's termination exacerbated her condition. Even if the Plaintiff were able to prove that her employer's wrongful termination caused or worsened a serious health condition such as to cause the employee to be unable to return to work where she otherwise could have done so, her argument fails as a matter of law.