UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1561

JULIE KRENZKE,

　　　　　Plaintiff - Appellant,

　　v.

ALEXANDRIA MOTOR CARS, INCORPORATED, d/b/a Lindsay Lexus of
Alexandria,

　　　　　Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.　Claude M. Hilton, Senior
District Judge.　(1:06-cv-01127-CMH)

Argued: May 15, 2008　　　　　　　　Decided: August 15, 2008

Before SHEDD, Circuit Judge, HAMILTON, Senior Circuit Judge, and
Terry L. WOOTEN, United States District Judge for the District of
South Carolina, sitting by designation.

Reversed and remanded by unpublished per curiam opinion.

Marni Elaine Byrum, MCQUADE & BYRUM, PLLC, Alexandria, Virginia,
for Appellant.　Edward Brian MacMahon, Jr., Middleburg, Virginia,
for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this Family and Medical Leave Act ("FMLA") case, Julie Krenzke appeals from the district court's grant of summary judgment in favor of her former employer, Lindsay Lexus of Alexandria ("Lindsay Lexus"). We reverse the judgment of the district court and remand for further proceedings.

I

A. The Family and Medical Leave Act

Congress enacted the FMLA in response to concern over "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." Miller v. AT & T Corp., 250 F.3d 820, 833 (4th Cir. 2001) (internal quotations omitted). The FMLA redresses the "serious problems with the discretionary nature of family leave" by guaranteeing leave to qualified employees in certain circumstances. Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 732 (2003) (internal quotations omitted). The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). Employers are prohibited from interfering with or denying the exercise of any right provided under the FMLA. Id. § 2615(a)(1). The FMLA provides a private

2

cause of action to employees who have been improperly denied FMLA leave by their employer.  Id. § 2617(a).


B.  Krenzke's Employment

Krenzke was employed as a Financial Services Manager by Lindsay Lexus from March 2002 until October 2004.  While Krenzke was apparently very good at her job when present, Lindsay Lexus asserts she was often late or absent from work and frequently complained of various vague health problems without supporting medical documentation.  Krenzke's symptoms relevant to this case began on the morning of September 29, 2004, when Krenzke asserts she awoke with problems commonly associated with periods of extreme stress and anxiety, including heart palpitations, nausea, shaking, clamminess, and dizziness.  Krenzke did not go to work on September 29, instead visiting Dr. Michael Greene, her primary care physician, who placed her on a 24 hour heart monitor and prescribed medication.  Following the visit, Dr. Greene faxed a note to Victoria Chase, Krenzke's direct supervisor, stating that Krenzke could not work for two days "due to illness."  Lindsay Lexus gave Krenzke leave for these days.

Krenzke returned to work on October 2, 2004.  On that day, she met with Jeff Warner, the general manager of Lindsay Lexus, and informed him that Dr. Greene was ordering that she take a leave of absence from work. Warner informed Krenzke that a leave of absence

3

was not a possibility. Krenzke raised the possibility of working part time, which was also rejected. Krenzke responded that if she could not get the time off, she would be forced to quit her job in order to pursue proper medical care. Nevertheless, Krenzke remained in her position at Lindsay Lexus after October 2. On October 5, 2004, Krenzke met with Warner and Harry Brenner, the corporate controller, to discuss Krenzke's health problems. Krenzke repeated her leave request but was again denied a medical leave of absence.

On October 7, 2004, Dr. Greene faxed a second note to Lindsay Lexus. In regard to Julie Krenzke, the note simply stated, "I recommend 2 weeks no work due to medical complications and illness." Also, on that same day, Krenzke sent a letter to Brenner stating that she was leaving her job because Lindsay Lexus did not grant her a leave of absence. Krenzke worked her last day at Lindsay Lexus on October 11, 2004.

After leaving her job, Krenzke visited Dr. Greene's office on October 25, November 2, and November 25. Dr. Greene subsequently referred Krenzke to a cardiologist and pulmonary specialist who performed a variety of diagnostic tests on Krenzke.

### C. Procedural History

Krenzke filed this action on October 6, 2006, alleging that Lindsay Lexus violated her rights under the FMLA by refusing to

4

allow her to take a medical leave of absence and constructively discharging her from her employment. The parties filed cross motions for summary judgment, and the district court granted summary judgment in favor of Lindsay Lexus. The district court determined Krenzke did not provide adequate notice to Lindsay Lexus that she was entitled to leave under the FMLA, and she did not demonstrate she was suffering from a serious health condition.

II

We first address the issue of notice under the FMLA, before considering whether Krenzke's condition was covered under the FMLA. We review the grant of summary judgment in favor of Lindsay Lexus de novo, viewing the facts and the inferences therefrom in the light most favorable to Krenzke. Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). Summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, (1986) (internal quotations omitted).

A.

The employee has the initial burden of triggering the FMLA by providing notice to her employer. However, under the framework established by the FMLA and the accompanying regulations, to

5

satisfy this initial burden, the employee need only inform her employer that she needs leave from work for a medical reason. The employee must provide "verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave." 29 C.F.R. § 825.302. "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. § 825.303(b). If the employee provides sufficient notice, the burden then shifts to the employer to gather additional information and determine if the FMLA is actually implicated. After the employee provides initial notification, "the employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b). The employer may seek the employee's cooperation in gathering information. If the employer finds the employee's request for leave vague or insufficient, the employer should ask the employee to provide the necessary details through additional documentation and information. 29 C.F.R. § 825.302(c). The employer has the duty to elicit the details required under the FMLA. Miller, 250 F.3d at 835.

The facts, viewed in a light most favorable to Krenzke, show she satisfied her initial burden under the FMLA by notifying Lindsay Lexus that she had a medical illness and needed medical leave because of the illness. Krenzke asserts she talked with her superiors at Lindsay Lexus on numerous occasions regarding her

6

illness and medical leave, including a conversation with Chase on September 29, a meeting with Warner on October 2, and a meeting with Warner and Brenner on October 5. Lindsay Lexus disputes the content, and even the occurrence, of these conversations. However, even ignoring the conversations, Lindsay Lexus received sufficient notice of Krenzke's possible FMLA claim from the note faxed by Dr. Greene on October 7. Although the note was summary in nature, it was received from a medical doctor and stated that an extended leave was needed for medical reasons. It was sufficient to notify Lindsay Lexus of the possibility that Krenzke needed FMLA leave. The burden then shifted to Lindsay Lexus to determine whether Krenzke's condition qualified her for FMLA leave. Lindsay Lexus did not meet its burden as required.

Lindsay Lexus does not claim that it made any inquiries or sought any additional information in response to Dr. Greene's note. Rather, Lindsay Lexus maintains that the October 7 note could not have provided notice under the FMLA because Krenzke was no longer employed by Lindsay Lexus on this date.[1] Krenzke testified in her deposition that she considered herself discharged from Lindsay Lexus after the meeting with Warner on October 2. However, whether or not Krenzke considered herself constructively discharged on

[1]While, for this purpose, Lindsay Lexus argues that Krenzke was no longer employed after October 2, Lindsay Lexus also argues in its brief that Krenzke worked full time until at least October 9, thus indicating she was not suffering from a serious health condition when she asked for leave on October 2.

7

October 2, the undisputed evidence reflects that Krenzke was present and performing the functions of her job after October 7, 2004, the date Lindsay Lexus received Dr. Greene's note.[2]

Lindsay Lexus also points to language in its employment handbook, which was given to Krenzke when she was hired. The handbook states: "Any request for a medical leave of absence must be accompanied by a statement, acceptable to the Company, from your physician indicating you are unable to perform your job and the anticipated date of your return." The October 7 note from Dr. Greene arguably satisfies this requirement. However, if Lindsay Lexus determined the note was not acceptable, Krenzke had the right to cure the deficiency and attempt to meet the handbook requirements. Id. at 835 (citing 29 C.F.R. § 825.305(d)). The record indicates Krenzke was not asked to provide additional information and was not informed that Dr. Greene's note did not satisfy the employee handbook requirement.

Although the district court carefully considered the evidence of record, we conclude Krenzke provided Lindsay Lexus with sufficient notice that she was entitled to leave under the FMLA.

---

[2]This conclusion also resolves Lindsay Lexus' statute of limitations argument, which was based on the fact that Krenzke was discharged October 2, 2004, and filed this action October 6, 2006.

8

The district court also held that Krenzke could not show that she was suffering from a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves– (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." Id. § 2611(11). FMLA regulations further define a "serious health condition involving continuing treatment by a health care provider" as including

> (I) A period of incapacity (i.e., inability to work . . . due to the serious health condition, treatment therefore, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
> (A) Treatment two or more times by a health care provider, . . . ; or
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of a health care provider.

29 C.F.R. § 825.114(a)(2). Of particular relevance to the present case, 29 C.F.R. § 825.115 provides, inter alia, "[a]n employee who must be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment." Id. Finally, "treatment" is defined as "examinations

9

to determine if a serious health condition exists and evaluations of the condition."  29 C.F.R. § 825.114(b).

Lindsay Lexus relies heavily on its position that Krenzke never presented a diagnosis of her health condition.  However, the framework created by the FMLA and its accompanying regulations focus on the impact of the symptoms and the scope of the treatment, not just the diagnosis which is eventually made.  The record reflects Krenzke sufficiently demonstrated a "serious health condition" by providing adequate proof of "continuing treatment by a health care provider" under 29 C.F.R. § 825.114(a)(2)(I).

Krenzke missed three days of work from September 29 to October 1.  On September 29, Krenzke visited Dr. Greene, who found she was apparently suffering from a variety of cardiovascular and psychiatric problems.  Dr. Greene prescribed Krenzke medications, placed her on a heart monitor, and recommended that she not return to work September 29 or September 30.  Krenzke returned to work on October 2.  The results from the heart monitor led Dr. Green to recommend that Krenzke take two weeks leave from work to properly diagnose and treat the symptoms she was having.  Around October 11, Krenzke left her employment after being denied this leave.

Krenzke then visited Dr. Greene on October 25, November 2, and November 25.  Both Dr. Greene's notes from those visits and Dr. Greene's statement submitted during summary judgment proceedings indicate that Krenzke's ongoing symptoms continued to be a focus of

10

her visits.[3]  Dr. Greene's notes and statement indicate that, during these visits, he conducted a regimen of tests to evaluate Krenzke's condition and prescribed medications to alleviate her symptoms.  He also referred Krenzke to a cardiologist and pulmonary specialist, where Krenzke underwent further testing.

The parties dispute what diagnosis, if any, Krenzke received during these visits.  However, this dispute is immaterial in light of our decision in Miller v. AT & T Corp., 250 F.3d 820.  In Miller, we held that a doctor's visit in which a physical exam was conducted and blood was drawn constituted "treatment" under 29 C.F.R. § 825.114(b), even though there was no diagnosis and no medication given to alleviate Miller's symptoms.  250 F.3d at 830-31.  While the record reflects Krenzke was at times absent from work and often complained of numerous health problems without supporting documentation, under the Miller standard, Krenzke's visits to Dr. Greene are sufficient to constitute treatments under the FMLA. Krenzke presented sufficient evidence she was incapacitated for more than three consecutive calendar days and

_____

[3]Lindsay Lexus argues that Dr. Greene's written statement, submitted in the district court during summary judgment, is inadmissible as improperly filed and beyond the scope of lay testimony.  However, Dr. Greene's statement only confirms what is revealed in his notes, Krenzke's deposition, and other evidence in the record.  The admissibility of this statement is of no consequence to our decision.

received treatment two or more times, thus satisfying the regulatory definition of a serious health condition under the FMLA.

III

Based on the foregoing, we conclude the district court improperly granted summary judgment in favor of Lindsay Lexus.[4] Accordingly, we reverse the judgment of the district court and remand for further proceedings.

<u>REVERSED AND REMANDED</u>

---

[4]Krenzke seeks a grant of summary judgment from this Court. That motion is denied.