Richard J. BOSSE, Jr., Plaintiff,

v.

**BALTIMORE COUNTY,**
et al., Defendants.

Case No. PWG–09–050.

United States District Court,
D. Maryland,
Northern Division.

March 10, 2010.

John B. Stolarz, The Stolarz Law Firm, Baltimore, MD, for Plaintiff.

Jeffrey Grant Cook, James J. Nolan, Jr., John Edward Beverungen, Baltimore County Office of Law, Towson, MD, for Defendants.

## MEMORANDUM AND ORDER

PAUL W. GRIMM, United States Magistrate Judge.

This Memorandum and Order addresses Defendants Baltimore County, James P.

O'Neill, and Captain David Swain's Motion for Summary Judgment, Paper No. 30; Plaintiff Richard J. Bosse, Jr.'s Cross–Motion for Partial Summary Judgment, Paper No. 36;[1] Opposition of Defendants to Plaintiff's Motion for Summary Judgment and Defendants' Reply in Support of Their Own Motion for Summary Judgment, Paper No. 44; and Plaintiff's Reply to Opposition of Defendants to Plaintiffs' [sic] Motion for Summary Judgment, Paper No. 50.[2] A hearing was held on March 9, 2010. For the reasons stated herein, Defendants' Motion for Summary Judgment on Plaintiff's Family Medical Leave Act, 29 U.S.C. §§ 2601–54 ("FMLA"), claims is GRANTED IN FULL as to Defendants O'Neill and Swain;[3] Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART as to Defendant Baltimore County; and Plaintiff's Cross–Motion for Partial Summary Judgment is DENIED. This Memorandum and Order disposes of Paper Nos. 30, 36, 44, and 50.

## I. BACKGROUND

Plaintiff is a Correctional Officer in the Baltimore County Department of Corrections (the "Department"), a position Plaintiff has held since December 1994. Mem. in Supp. of Defs.' Mot. for Summ. J. 1 ("Defs.' Mem."), Paper No. 30–3. Defendant O'Neill is the Director of the Depart-

---

1. In accordance with Local Rule 105.2.c, Plaintiff filed a Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross–Motion for Summary Judgment ("Pl.'s Mem."), Paper Nos. 36–2—36–4, with Plaintiff's Cross–Motion for Partial Summary Judgment.

2. This case has been referred to me for all proceedings with the consent of the parties. 28 U.S.C. § 636(c)(1)(2006); Local Rule 301.4.

3. As discussed in Part III.A, *infra,* suing O'Neill and Swain in their "official" capacities is indistinguishable from suing the agency for which they work. In contrast, a suit against them in their "individual" capacities seeks to hold them personally liable. Inasmuch as I have concluded that O'Neill and Swain are not subject to individual liability under the FMLA, only Defendant Baltimore County may be liable for any of Plaintiff's FMLA claims, and granting summary judgment to O'Neill and Swain as individuals in the FMLA claim eliminates them from liability in any capacity.

ment and Defendant Swain, a Department employee, is Plaintiff's supervisor. Am. Compl. ¶¶ 5, 6, Paper No. 21–2.

Plaintiff's son Eric Bosse was born in January 2001 and later diagnosed with "chronic moderate to severe asthma and severe food allergies." Pl.'s Mem. 2. During Plaintiff's tenure with Baltimore County, he has taken leave under the FMLA on multiple occasions. Defs.' Mem. 2. According to Plaintiff, "[m]any (but not all) of [his] FMLA requests were to care for his son's severe medical condition." Pl.'s Mem. 2. He also took FMLA leave due to his own medical needs. Am. Compl. ¶ 34.

While working for the Department, Plaintiff filed three complaints with the United States Department of Labor ("DOL"). The first was in 2000, and in it he alleged that he had to use personal sick leave when his asthma prohibited his attendance at work, because Baltimore County was not complying with the FMLA. Pl.'s Mem. 16. He added that he received verbal counseling for taking FMLA leave. *Id.* The second was in 2006, when he complained that he was suspended for three days for taking leave under the FMLA rather than working required overtime. *Id.* When Defendants deposed Plaintiff in July 2009, Plaintiff said that the matter was resolved to his satisfaction. Bosse Dep. 10:3–11:17, July 21, 2009, Defs.' Mem. Ex. 6, Paper No. 30–8. The third was in 2008, when he allegedly was disciplined again "for taking leave sanctioned by the FMLA." Pl.'s Mem. 16. As a result of these complaints, Baltimore County "agreed to remove the disciplinary actions from Plaintiff's personnel file." *Id.* But, Plaintiff alleged that Defendants "have not removed the counseling notation from plaintiff's performance evaluation." Am. Compl. ¶ 20; *see also* Bosse Dep. 14,

15–16 (stating that Defendants did not remove the notation that he was "counseled for lateness" and did not note that the punishment "was rescinded").

Plaintiff filed a Complaint in federal court on January 9, 2009, Paper No. 2, and Defendants filed an Answer the same day, Paper No. 6.[4] As amended, the Complaint stated that "Defendants have imposed unlawful restrictions on [Plaintiff's] use of FMLA, or have made unnecessary and burdensome requests making the Plaintiff's use of FMLA unduly difficult." Am. Compl. ¶¶ 14–15. Asserting that he "has provided Defendant Baltimore County appropriate documentation and has been authorized to use intermittent leave under the FMLA for attendance at the son's medical appointments or to care for his son as prescribed by the child's physician's medical certification," Plaintiff alleged that "Defendants' actions constitute interference with Plaintiff's substantive rights under FMLA." *Id.* ¶ 39. Plaintiff asserted that Defendants' interference with his use of FMLA leave happened "repeatedly," without identifying all instances or the time period in which they occurred. *Id.* ¶ 37. Further, he alleged that Defendants retaliated against him for using FMLA leave, *id.* ¶ 43, based on the fact that Defendants allegedly "made it very clear that the Plaintiff's absenteeism, comprised mostly of FMLA leave, was a major factor in Defendants' decision not to promote him." *Id.* ¶ 23. Plaintiff claimed that he unsuccessfully applied for promotions from 2005 to 2008. *Id.* ¶¶ 21, 24.

In addition, according to Plaintiff, when he tore a ligament in his right ankle in 2008, he asked for FMLA leave and "requested that vacation, personal, and compensation leave be substituted for qualified

---

4. Plaintiff originally filed suit in the Circuit Court for Baltimore County on or about December 1, 2008, and Defendants filed a Notice of Removal to this Court on January 9, 2009. Paper No. 1.

FMLA" when he "exhausted all his earned sick leave." *Id.* ¶ 34. Plaintiff alleged that "defendant; in violation of the FMLA statute, refused to permit the Plaintiff to use such other accrued leave with the result that Defendant Baltimore County unlawfully deducted money from Plaintiff's paycheck." *Id.* Plaintiff claimed that Defendants violated Baltimore County Policy § 9.16 by coding some of Plaintiff's FMLA leave as "unpaid unauthorized absence" instead of "unpaid leave with permission," which led to him being counseled for taking FMLA leave. *Id.* ¶ 37. Plaintiff contended that he was denied FMLA leave, despite his timely requests, on multiple occasions in 2008 and 2009. *Id.* However, he admitted that the payroll records were corrected to reflect FMLA leave for his March 2008 absence. *Id.*

In addition, Plaintiff claimed that Defendants Baltimore County and O'Neill deprived him of his right to free speech under the First and Fourteenth Amendments and 42 U.S.C. § 1983 "by impermissibly depriving the plaintiff [of] a promotion on account of plaintiff's exercise of his First Amendment right to petition for redress of grievances" and "by repeatedly and continuously making it unreasonably difficult to avail himself of the rights afforded by the FMLA." *Id.* ¶¶ 50, 55. Plaintiff also alleged that Defendants Baltimore County and O'Neill's actions violated Article 40 of the Maryland Declaration of Rights. *Id.* ¶ 59. Finally, he asked for injunctive relief such that Defendants could not violate the FMLA or "mak[e] it difficult for [Plaintiff] to claim the benefits" of the FMLA. *Id.* ¶ 66.

On September 9, 2009, Defendants moved for summary judgment, and on October 19, 2009, Plaintiff filed his opposition thereto, as well as a cross-motion for summary judgment on his interference claim. Paper Nos. 30, 36. On November 18, 2009, Defendants filed their opposition to Plaintiff's cross-motion and a reply to Plaintiff's opposition. Paper No. 44. Plaintiff filed his reply to Defendants' opposition on December 14, 2009. Paper No. 50.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is only proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Meson v. GATX Tech. Servs. Corp.,* 507 F.3d 803, 806 (4th Cir.2007) (citing Fed.R.Civ.P. 56(c)). The moving party bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.,* 810 F.2d 1282, 1286 (4th Cir.1987). When considering cross-motions for summary judgment, "the court must view each motion in a light most favorable to the non-movant." *Linzer v. Sebelius,* No. AW–07–597, 2009 WL 2778269, at *4 (D.Md. Aug. 28, 2009); *see Mellen v. Bunting,* 327 F.3d 355, 363 (4th Cir.2003); *see also Ricci v. DeStefano,* —— U.S. ——, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (drawing all reasonable inferences in favor of non-moving party on motion for summary judgment); *George & Co., LLC v. Imagination Entm't Ltd.,* 575 F.3d 383, 391–92 (4th Cir.2009) (same); *Dean v. Martinez,* 336 F.Supp.2d 477, 480 (D.Md.2004) (same).

If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. Instead, the evidentiary materials submit-

ted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Moreover, to be entitled to consideration on summary judgment, the evidence supporting the facts set forth by the parties must be such as would be admissible in evidence. *See* Fed.R.Civ.P. 56(c); *see also Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir.1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment); *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315–16 (4th Cir.1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof in the form of admissible evidence that could carry the burden of proof in his claim at trial."). With regard to documentary evidence, this Court previously has held that "unsworn, unauthenticated documents cannot be considered on a motion for summary judgment. To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)—that the documents be admissible in evidence." *Miskin v. Baxter Healthcare Corp.*, 107 F.Supp.2d 669, 671 (D.Md.1999) (citing *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir.1993)).

## III. DISCUSSION

■ The FMLA entitles an "eligible employee" to "a total of 12 workweeks of leave during any 12–month period" for the care of a newborn son or daughter; for the care of a spouse, parent, son, or daughter with a "serious health condition"; and/or for the employee's own "serious health condition that makes the employee unable to perform [his or her work] functions." 29 U.S.C. § 2612(a)(1). An "eligible em-ployee" is one with at least one year of employment with the employer, and who worked a minimum of 1,250 hours during the twelve months prior to the first day requested for leave. *Id.* § 2611(2)(A); *see* 29 C.F.R. § 825.111. A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves ... inpatient care ... or ... continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Notably, "the FMLA does not entitle eligible employees to paid leave." *Glunt v. GES Exposition Servs., Inc.*, 123 F.Supp.2d 847, 870 (D.Md. 2000). But, the employer must continue to provide any group health care coverage that the employee received while working, and it must restore the employee to his or her previous position or its equivalent upon his return. 29 U.S.C. § 2614(a)(1), (c)(1). The employee may take intermittent leave or work on a reduced leave schedule. *Id.* § 2612(b)(1), (c). An employer violates the FMLA if it "interfere[s] with, restrain[s], or den[ies]" an employee's exercise of FMLA rights, *id.* § 2615(a)(1), or "discharge[s] or in any other manner discriminate[s] against any individual for opposing any practice made unlawful by" the FMLA, *id.* § 2615(a)(2).

### A. INDIVIDUAL DEFENDANTS

Plaintiff sues Defendants O'Neill and Swain in their individual and official capacities. Am. Compl. ¶¶ 5–6. It is undisputed that Defendants O'Neill and Swain are public employees. Defendants contend that Defendants O'Neill and Swain "cannot be held liable under any aspect of the FMLA" as a matter of law because only "Baltimore County is Plaintiff's employer." Defs.' Mem. 18. Plaintiff argues that "a majority of the courts, including District Courts in the 4th Circuit, have found that individual liability may be imposed on public individuals." Pl.'s Mem. 33.

In *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Supreme Court distinguished between individual, or personal, capacity suits and official capacity suits: "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 165, 105 S.Ct. 3099 (citation omitted); *see Sadowski v. U.S. Postal Serv.*, 643 F.Supp.2d 749, 752 n. 2 (D.Md.2009) ("[O]fficial capacity claims against public employees are the same as suits against the public agency itself."). Thus, the issue before this Court is whether O'Neill and Swain can be held liable in their individual capacities if they violated the FMLA.

This Court recently addressed the same issue in *Sadowski*, 643 F.Supp.2d 749. There, the individual public employee defendants, who were the plaintiff's supervisor and the estate of another individual who had supervised the plaintiff, moved to dismiss for failure to state a claim. *Id.* at 750–51. Noting that "no directly applicable case law" exists from the U.S. Supreme Court or the Fourth Circuit, and "the district courts within the Fourth Circuit are also split," *id.* at 753, the Court applied a textual analysis to 29 U.S.C. § 2611(4)(A), which provides the FMLA definition of an employer, *id.* at 754–57:

The term "employer"-

(i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;

(ii) includes-

(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and

(II) any successor in interest of an employer;

(iii) includes any "public agency", as defined in section 203(x) of this title; and

(iv) includes the Government Accountability Office and the Library of Congress.

29 U.S.C. § 2611(4)(A).

The *Sadowski* Court stated that the subsections, which "add substance to the term 'employer,'" are "distinct and independent from each other." 643 F.Supp.2d at 754. Reasoning that "an interpretation of section 2611(4)(A) that permits individual liability for public employees would render certain [other] provisions of the statute superfluous or meaningless," contrary to the rules of statutory construction, *id.* at 755, the Court concluded that public employees were not "employees" for purposes of the FMLA and therefore could not be liable under the statute, *id.* at 757. *Accord Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir.2003) ("the FMLA's individual liability provision does not extend to public agencies"); *Wascura v. Carver*, 169 F.3d 683, 686, 687 (11th Cir.1999) (analogizing to Fair Labor Standards Act, 29 U.S.C. §§ 201–19 ("FLSA"), and holding that "a public official sued in his or her individual capacity is not an 'employer' under the FMLA").

It is true that the Fifth and Eighth Circuits, other district courts in the Fourth Circuit, and indeed this Court previously, have reached the opposite conclusion, often through analogy to the FLSA. *E.g.*, *Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006) (analogizing to FLSA); *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir.2002) (analyzing plain language of statute); *Sheaffer v. County of Chatham*, 337 F.Supp.2d 709, 727–28 (M.D.N.C.2004) (an-

alyzing plain language of statute); *Cantley v. Simmons,* 179 F.Supp.2d 654, 657–58 (S.D.W.Va.2002) (analogizing to FLSA); *Knussman v. Maryland,* 935 F.Supp. 659, 664 (D.Md.1996) (analogizing to FLSA). The *Sadowski* Court undertook its own comparison of the FMLA and the FLSA, and stated that "the similarities between the two statutes serve to underscore a material difference that requires that they be interpreted differently with respect to the question of individual liability for public employees." 643 F.Supp.2d at 756.

█ I agree with the well-reasoned conclusion in *Sadowski,* that public employees cannot be held liable in their individual capacities for violations of the FMLA. Therefore, summary judgment is GRANTED IN FULL as to Defendants O'Neill and Swain for Plaintiff's FMLA claims.

## B. STATUTE OF LIMITATIONS

█ The statute of limitations for a claim under the FMLA is two years. 29 U.S.C. § 2617(c)(1). But, a three-year statute of limitations applies if the alleged violation was willful. *Id.* § 2617(c)(2). A violation is "willful" if "the employer 'knew or showed reckless disregard [as to] whether its conduct was prohibited'" by the FMLA. *IJames v. Autumn Corp.,* No. 1:08CV777, 2009 WL 2171252, at *13 (M.D.N.C. July 20, 2009) (quoting *Settle v. S.W. Rodgers Co.,* 182 F.3d 909 (4th Cir. 1999)). The violation must involve "'more than mere negligence.'" *Id.* (quoting *Honeycutt v. Baltimore County, Maryland,* Civil No. JFM–06–0958, 2007 WL 1858691, at *3 (D.Md. June 18, 2007), *aff'd,* 278 Fed.Appx. 292 (4th Cir.2008)); *see Porter v. N.Y. Univ. Sch. of Law,* 392 F.3d 530, 531–32 (2d Cir.2004). The *Honeycutt* Court noted that courts "have found no willfulness where the employer granted the employee's request for leave." 2007 WL 1858691, at *3. It continued:

> Attempts to accommodate an employee's disability or condition also indicate a lack of willfulness on the employer's part. Moreover, an employer that supplies the necessary FMLA forms, follows up with the employee regarding insufficient paperwork, and keeps the employee apprised of the application's status cannot be said to have willfully violated the statute.

*Id.* (citations omitted) (quoted in *IJames,* 2009 WL 2171252, at *13). "To raise a genuine issue of material fact, the Plaintiff must present some evidence of 'willfulness' through depositions, affidavits, answers to interrogatories, or admissions on file." *Washington v. Purdue Farms, Inc.,* No. 4:07–3552–TLW–TER, 2009 WL 386926, at *8 (D.S.C. Feb. 13, 2009).

█ Defendants argue that Plaintiff's interference claim, as it pertains to an incident in 2000 and his 2004 transfer, is time-barred.[5] Defs.' Mem. 17; Defs.' Opp'n & Reply 11. In addition, Defendants assert that Plaintiff's retaliation claim, as it pertains to possible promotions in November 2005 and October 2006, is time-barred. Defs.' Mem. 25 n. 10. Plaintiff insists that Defendants' "violation of the FMLA was willful." Pl.'s Mem. 40. According to Plaintiff, Defendants' "willfully contumacious attitude" was evidenced by the counseling Plaintiff received for taking leave that he claims should have been qualified as FMLA leave. *Id.* at 46. In his view, he "alleged sufficient facts in his Amended Complaint" and in support of his summary judgment motion to show the willfulness of Defendants' purported FMLA violation. *Id.* at 40.

---

**5.** The "instances" Defendants mention were the dates on which Plaintiff filed complaints with the DOL; Plaintiff actually refers to "nu-merous occasions" on which Defendants interfered with his FMLA rights. Pl.'s Mem. 3; *see* Am. Compl. ¶¶ 34, 37.

Plaintiff filed his claim in State court on or about December 1, 2008, Paper No. 1, but he did not specify the dates of all instances on which Defendants allegedly violated the FMLA. Am. Compl. Any incidents that occurred before December 1, 2006, fall outside the two-year statute of limitations, and even if Plaintiff provided sufficient evidence of willfulness, any incidents that occurred before December 1, 2005, fall outside the three-year statute of limitations. Most of the evidence Plaintiff identifies to support his allegation of willfulness is inadmissible hearsay in his own affidavit. Pl.'s Mem. Ex. 1 ¶¶ 36–41, 46. However, in the Memorandum in Support of Defendants' Motion for Summary Judgment, Defendants state that "Plaintiff's attendance and use of leave earned the attention of his superiors," and "his unscheduled leave invited curiosity." Further, Defendants wrote on Plaintiff's performance evaluations that Plaintiff needed to "continue working on unscheduled Leave Time" and "improve his unscheduled Leave Time." Pl.'s Mem. Ex. 29. From this evidence, a jury reasonably could find that Defendants recklessly disregarded the fact that the bulk of Plaintiff's leave time was FMLA leave, and that Defendants allowed Plaintiff's FMLA leave time to impact his performance evaluations negatively. Moreover, a jury reasonably could find that Defendants thereby interfered with Plaintiff's FMLA rights by discouraging Plaintiff from using FMLA leave in the future. *See Glunt*, 123 F.Supp.2d at 870 (discouraging employee's use of FMLA leave is form of interference). Thus, Plaintiff has sufficiently alleged and provided evidentiary support for a willful violation to survive summary judgment on his FMLA claims with regard to incidents that occurred after December 1, 2005, but before December 1, 2006. And, notwithstanding the statute of limitations, Plaintiff may offer evidence of acts before December 1, 2005

"as background evidence in support of a timely claim." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

In summary, Defendants' Motion for Summary Judgment on Plaintiff's FMLA claims is GRANTED IN PART, as it pertains to all incidents that occurred before December 1, 2005.

### C. FMLA INTERFERENCE CLAIMS

■ To make out a prima facie case of interference under the FMLA, 29 U.S.C. § 2617, an employee must first "prove that she was afflicted with an FMLA-qualifying condition, because otherwise she did not have any right under the Act with which her employer could have interfered." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 384 (4th Cir.2001). The employee then must show (1) "that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights"; and (2) that "the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.* 535 U.S. 81, 89, 122 S.Ct. 1155, 152 L.Ed.2d 167 (U.S.2002); *see Reed v. Buckeye Fire Equip.*, 241 Fed. Appx. 917, 924 (4th Cir.2007); *see also Rodriguez v. Smithfield Packing CO.*, 545 F.Supp.2d 508, 516, 523 (D.Md.2008) (stating that "[t]o establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled"; noting that a plaintiff cannot recover if the "violation caused no harm").

■ The employee need not have informed the employer that FMLA leave

was being requested specifically; "the employee need only inform her employer that she needs leave from work for a medical reason." *Krenzke v. Alexandria Motor Cars, Inc.,* 289 Fed.Appx. 629, 632 (4th Cir.2008). Put another way, the employee must "provide 'verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave.'" *Id.* (quoting 29 C.F.R. § 825.302). Actions that constitute "interfering with" an employee's FMLA rights include "'refusing to authorize FMLA leave'"; "'discouraging an employee from using such leave'"; "'avoid[ing] responsibilities under FMLA'"; and "'us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.'" *Glunt,* 123 F.Supp.2d at 870 (quoting 29 C.F.R. § 825.220(b), (c)). Prejudice exists if "compensation and benefits [are] lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(I), ... other monetary losses [are] sustained 'as a direct result of the violation,' § 2617(a)(1)(A)(i)(II)," or the employee is denied "employment, reinstatement, [or] promotion, § 2617(a)(1)(B)." *Ragsdale,* 535 U.S. at 89, 122 S.Ct. 1155; *Reed,* 241 Fed.Appx. at 924.

Defendants do not dispute that Plaintiff's torn ligament and his son's asthma were conditions that qualified for FMLA leave; that Plaintiff was an "eligible employee" under the FMLA; or that Plaintiff notified Baltimore County that he planned to take FMLA leave. *See Rhoads,* 257 F.3d at 384; *Rodriguez,* 545 F.Supp.2d at 516. However, Defendants insist that "Plaintiff's 'rights' have not exactly been impinged" and he has not been discouraged from taking leave, based on the fact that he has continued to take FMLA leave. Defs.' Mem. 19, 20 n. 7. Further, they argue that Plaintiff "suffered no harm." *Id.* Also, according to Defendants, to survive summary judgment, Plaintiff must show that he has suffered an "adverse employment action." *Id.* at 21. In their view, Plaintiff has only alleged that he "was counseled," and "counseling is not an adverse employment action." *Id.*

Plaintiff concedes that "many of the instances listed in the brief do not rise to the level of adverse employment action," but he insists that Defendants "repeatedly, and routinely, made the taking of FMLA leave an arduous process." Pl.'s Mem. 35. He further maintains that they violated the FMLA by "limiting the plaintiff's use of FMLA leave for his son to 2 episodes a month"; "requiring recertifications to six months, even though the certification was for a one year period"; and "requiring additional documentation." *Id.* at 36–37. Plaintiff cites various instances in which he initially was denied FMLA leave, but the matter later was resolved in his favor, albeit after he had to go to the trouble of contesting the denial of FMLA leave. Pl.'s Mem. 23–25. In addition, he claims that on December 5, 2007, Captain Swain denied Plaintiff's FMLA leave request "to come in late," even though Plaintiff "had intermittent leave approval on file" and "called the Detention Center, advising that he was requesting FMLA leave." *Id.* at 23. He also claims that in 2004 he was transferred involuntarily to a shift that made it more difficult for him to care for his son. *Id.* at 22.

Further, Plaintiff contends that he has established that he suffered harm by showing that he lost wages on seven different dates because Defendants did not allow him to take FMLA leave. *Id.* at 25, 37. Plaintiff also alleges that he requested paid FMLA leave six times in 2008, but his attendance records incorrectly were marked as if he took "unpaid leave, without permission," instead of "unpaid leave, with permission," and therefore he was not paid for those days, even though he had

vacation and compensatory time available that should have been used to prevent reduction of his pay. *Id.* at 22–26.

In addition, Plaintiff claims that he was "formally counseled" about arriving late twice within a year, even though "both instances were FMLA related to medical care for his son." *Id.* at 26. According to Plaintiff, "counseling demonstrates a willfully contumacious attitude toward the plaintiff when viewed with the other obstructive actions taken by the defendant toward the plaintiff's FMLA use." *Id.* at 46. He asks the Court to "enter Partial Summary Judgment in favor of the plaintiff on the issue of willful interference with the plaintiff's FMLA rights." *Id.* at 48.

In response, Defendants challenge the admissibility of the affidavit of a witness offered by Plaintiff in support of his claims, Kaeshawn Ham, who swore that O'Neill threatened termination if she used FMLA leave. Defendants contend that Ms. Ham was not identified in Plaintiff's response to Defendants' interrogatories, and therefore Ms. Ham's affidavit should be stricken. Defs.' Opp'n & Reply 1–2. Also, they insist that Plaintiff did not state in his answers to interrogatories that, in the past two months, he was not selected for promotion to a position for which he interviewed, and that fact, therefore, is also inadmissible. *Id.* at 2. In addition, they claim that Retired Sergeant Elizabeth Kay Booz's deposition, as excerpted in Plaintiff's Memorandum, is inadmissible "because it's all speculation." *Id.* at 3. Defendants argue that unreliable attendance can render an employee ineligible for FMLA leave. *Id.* at 2 (citing *Hayduk v. City of Johnstown*, 580 F.Supp.2d 429, 455 (W.D.Pa.2008)). Defendants further insist that Baltimore County did not consider FMLA leave when making decisions regarding employment. *Id.* at 3.

Defendants contend that " 'lateness is not leave' " for purposes of the FMLA. Defs.' Opp'n & Reply 8–9 (quoting *Brown v. E. Maine Md. Ctr.*, 514 F.Supp.2d 104, 111 (D.Me.2007)). Defendants argue that Baltimore County allowed for two absences per month and informed Plaintiff that it would "change the frequency" if Plaintiff "submit[ted] more medical documentation," which Plaintiff "has never done." *Id.* at 10–11. They insist that "an employer's request for Plaintiff to submit adequate documentation is not interference." *Id.* at 12. As for the pay Plaintiff alleges he lost, Defendants point out that generally "FMLA leave is *unpaid* leave," *id.* at 12, and they claim that "Plaintiff had no paid leave available to him" when FMLA leave that he took was deducted from his pay, *id.* at 14.

Plaintiff replies that "defendants' stated reasons for failing to pay him for FMLA leave, or to mark him Code 'X' are not correct."[6] Pl.'s Reply 2. According to Plaintiff, "29 CFR § 825.207 permits an employer to offer an employee to take and exhaust the employee's available paid leave prior to taking unpaid leave," *id.* (footnote omitted), and "Baltimore County policy requires employees to use their earned applicable paid leave as part of the 12 weeks provided under FMLA prior to using unpaid leave," *id.* at 3. Further, he insists that he "had sufficient leave time," *id.*, and that even if he did not, "the proper coding should have been 'ZY' or 'Z', absent with permission." *Id.* at 6. In his view, it "does not matter" that the erroneous designation of his work absence "may have been unintentional," because "[m]ost courts hold that an employer's subjective intent is irrelevant in interference claims." *Id.*

In addition, Plaintiff argues that Baltimore County violated 29 C.F.R. § 825.207(h) by requiring more documen-

6. Code "X" designates absence without per- mission. Defs.' Opp'n 4 n. 3.

tation for FMLA leave that for non-FMLA sick leave.[7] *Id.* at 7. Plaintiff insists that paid FMLA leave is designated as, and lumped in with, sick leave, thereby triggering an "occurrence" for which an employee may be disciplined. *Id.* at 7. Thus, he argues that Baltimore County's "Absence Control Policy discriminated [against] persons using FMLA leave." *Id.* at 23. Further, he alleges that notes in his performance evaluations regarding his use of "unscheduled leave" also referred to his use of FMLA leave. *Id.* at 8. According to Plaintiff, Sgt. Booz's testimony is not "pure speculation" because Sgt. Booz "recalls specific instances where ... her supervisors, Major Ittner and Captain Berry, told her to assign higher scores in the evaluations because of good attendance." *Id.* at 21. He further insists that the identity of Kaeshawn Ham was disclosed during a deposition that Defense counsel attended, and that Defendants were in possession of her personal records, so they suffered no prejudice by Plaintiff's failure to amend his interrogatory answers to identify her, adding that he does not object to Defendants taking her deposition. *Id.* at 22.

■ Through affidavits and work-related documents, Plaintiff has provided sufficient evidence to demonstrate a triable issue of whether Defendants "violated § 2615 by interfering with, restraining, or denying his ... exercise of FMLA rights," *Ragsdale*, 535 U.S. at 89, 122 S.Ct. 1155, for a jury to find in his favor. He has shown that Defendants repeatedly denied his FMLA requests or required additional documentation that exceeded the documentation required for non-FMLA leave. *E.g.*, Pl.'s Mem. Ex. 30A–C, 32A–E, 33A, 34A–C. Further, Plaintiff has identified various instances in which his leave may have been improperly coded. *E.g.*, Pl.'s Mem. 24 & Ex. 31, 36A–F, 37A–F. Therefore, a genuine dispute of material fact exists regarding whether Defendants interfered with or denied Plaintiff's use of FMLA leave.

In addition, Plaintiff has provided sufficient documentation of the dates on which he lost pay, such that a jury could find in his favor on the issue of whether he suffered an injury. *E.g.*, Pl.'s Mem. Ex. 31,

---

7. Plaintiff cites to 29 C.F.R. § 825.207, revised as of July 1, 2008, which provided:

> When an employee or employer elects to substitute paid leave (of any type) for unpaid FMLA leave under circumstances permitted by these regulations, and the employer's procedural requirements for taking that kind of leave are less stringent than the requirements of FMLA (e.g., notice or certification requirements), *only the less stringent requirements may be imposed. An employee who complies with an employer's less stringent leave plan requirements in such cases may not have leave for an FMLA purpose delayed or denied on the grounds that the employee has not complied with stricter requirements of FMLA.* However, where accrued paid vacation or personal leave is substituted for unpaid FMLA leave for a serious health condition, an employee may be required to comply with any less stringent medical certification requirements of the employer's sick leave program.

29 C.F.R. § 825.207(h) (emphasis added) (cross-references omitted). The equivalent subsection of the revised regulation, 29 C.F.R. § 825.207(a), effective as of January 16, 2009, provides:

> When an employee chooses, or an employer requires, substitution of accrued paid leave, the employer must inform the employee that the employee must satisfy any procedural requirements of the paid leave policy only in connection with the receipt of such payment. *See* § 825.300(c). *If an employee does not comply with the additional requirements in an employer's paid leave policy, the employee is not entitled to substitute accrued paid leave, but the employee remains entitled to take unpaid FMLA leave. Employers may not discriminate against employees on FMLA leave in the administration of their paid leave policies.*

29 C.F.R. § 825.207(a) (emphasis added).

36A–F, 37A–F. Therefore, a genuine dispute of material fact exists as to whether Plaintiff suffered prejudice in the form of wages that he allegedly would not have lost had his FMLA requests been granted.

Therefore, Defendants' Motion for Summary Judgment on Plaintiff's interference claim is DENIED IN PART, as it pertains to all non-time barred incidents that occurred after December 1, 2005.

Correspondingly, Defendants have provided sufficient evidence to create a genuine dispute of material fact regarding whether they were justified in denying Plaintiff paid FMLA leave and requiring additional documentation. *E.g.,* Defs.' Mem. Ex. 6 ¶ 48; *see also* Pl.'s Mem. Ex. 48. Therefore, Plaintiff's Cross-motion for Partial Summary Judgment is DENIED as to the interference claim.

### D. FMLA RETALIATION CLAIM

 A retaliation claim under the FMLA differs from an interference claim under the FMLA in that "the interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent." *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1051 (8th Cir.2006). To establish a prima facie case of retaliation under the FMLA, an employee must prove that "(1) she 'engaged in protected activity;' (2) 'an adverse employment action was taken against her;' and (3) 'there was a causal link between the protected activity and the adverse employment action.'" *Wright v. Southwest Airlines,* 319 Fed.Appx. 232, 233 (4th Cir.2009) (quoting *Mackey v. Shalala,* 360 F.3d 463, 469 (4th Cir.2004)); *see Munday v. Waste Mgmt. of N. Am., Inc.,* 126 F.3d 239, 242 (4th Cir.1997); *Ross v. Comm. Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985); *Glunt,* 123 F.Supp.2d at 871. An adverse employment action is one that " 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.,* 487 F.3d 208, 219 (4th Cir.2007) (quoting *James v. Booz–Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir.2004) (citations and quotation marks omitted)). To prove that an employment action was adverse, an employee "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (citations and quotation marks omitted). In addition, "[t]emporal proximity between the employer's adverse employment action and the employee's exercise of her rights under the FMLA may reasonably support an inference that the action was taken in violation of the FMLA." *Glunt,* 123 F.Supp.2d at 871.

 In the Fourth Circuit, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 800–06, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to claims of retaliation, because they are treated "as analogous to those derived under Title VII." *IJames v. Autumn Corp.,* 2009 WL 2171252, at *8 (M.D.N.C.2009); *Yashenko v. Harrah's NC Casino Co.,* 446 F.3d 541, 546 (4th Cir.2006); *Laber v. Harvey,* 438 F.3d 404, 432 (4th Cir.2006); *Glunt,* 123 F.Supp.2d at 871. After an employee makes out a prima facie case, the burden shifts to the employer, which then must "proffer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Wright,* 319 Fed.Appx. at 233; *see Matvia v. Bald Head Island Mgmt., Inc.,* 259 F.3d 261, 270–71 (4th Cir.2001). If the employer does so, the burden shifts back

to the employee "to prove by a preponderance of the evidence that the proffered reasons were pretextual." *Wright,* 319 Fed.Appx. at 233; *see Dennis v. Columbia Colleton Med. Ctr.,* 290 F.3d 639, 646 (4th Cir.2002) ("Under the *McDonnell Douglas* framework, once an employer has met its burden of producing a legitimate nondiscriminatory explanation for its decision, the plaintiff is afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination.'") (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *Matvia,* 259 F.3d at 271 (same).

The gravamen of Plaintiff's retaliation claim is tied to his unsuccessful attempts to be promoted to Corporal. Defendants assert that Plaintiff has to show that "he is better qualified than those who did *get* promoted." Defs.' Mem. 26. According to Defendants, Plaintiff "fails to show he is or was more qualified than his competitors" or that "he has deserved a promotion over these men and women." *Id.* at 28.

 Plaintiff states that Baltimore County introduced the position of Corporal in 2005, Plaintiff applied, and he passed the qualifying exam. Pl.'s Mem. 15. But, he was not promoted. Defs.' Mem. 1. According to Plaintiff, "supervisors routinely advised the Plaintiff that his leave, which included FMLA leave, was keeping the Plaintiff from being promoted." Pl.'s Mem. 16. He contends that O'Neill, who "ma[de] the final selection," *id.* at 15, had "animosity toward the Plaintiff's FMLA usage and complaints," *id.* at 21. He also alleges that "many of the employees selected for the Corporal position had less experience than the Plaintiff but used very little leave." *Id.* at 18. Plaintiff lists his qualifications, notes that his evaluations expressly indicated that Plaintiff's "weakness is his unscheduled leave time," and insists that "the overwhelming majority of the leave was FMLA." Pl.'s Mem. 39. Noting that circumstantial evidence is sufficient to prove discriminatory intent, Plaintiff claims that "[t]he fact that all of the candidates ... have taken very little leave, leads one to question whether the promotion is driven solely by attendance, and if so, whether plaintiff's FMLA leave was in fact a factor which defendant O'Neill used to avoid promoting the plaintiff." *Id.* at 46.

With regard to Plaintiff's purported qualifications, Defendants argue that "'a plaintiff's own opinions about [his or] her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions'" and "'cannot create an issue of material fact because "[a]n employee's perception of his own performance ... cannot tell a reasonable factfinder something about what the employer believed about the employee's abilities."'" Defs.' Opp'n & Reply 5 (citations omitted). Defendants assert that O'Neill "explained thoroughly why Plaintiff has not been promoted"; e.g., O'Neill stated that, in 2005, Plaintiff "'did not fully articulate his understanding of processing inmates in various circumstances'"; in 2006, Plaintiff exhibited "deficiencies 'in the area of holding staff accountable'"; in 2007, Plaintiff "needed 'additional experience in guiding staff in the direct supervision philosophy'"; and in 2008, Plaintiff "needed to 'increas[e] his knowledge of the department's philosophy [to] increas[e] his opportunity for future promotions.'" *Id.* at 6. Further, O'Neill said that Plaintiff "'lacks that leadership presence'" that O'Neill saw in one individual who was promoted. *Id.* at 7. In addition, Defendants insist that having more years of experience than those selected for promotion is not equivalent to being more qualified. *Id.*

Plaintiff replies that "Defendant O'Neill's testimony about the plaintiff's performance is in direct conflict with the plaintiff's Performance Evaluations, and the majority of the plaintiff's supervisors who have had the occasion to supervise and work with him," Pl.'s Reply 13, and O'Neill's "assessment is contradicted by the actual work done by the plaintiff," *id.* at 14. Plaintiff contends that "[t]o the extent the interviewers relied on subjective criteria in their evaluation of the plaintiff, their evaluation[s] are subject to strict scrutiny." *Id.* at 16 (citing *Page v. Bolger*, 645 F.2d 227, 230 (4th Cir.1981) (en banc)). Plaintiff asserts that his performance evaluations are "generally favorable," and only unfavorable in that they "caution about using 'unscheduled leave.'" *Id.* at 18. Plaintiff contends that he "presented ample evidence that promotions go to those who do not miss time from work." *Id.* at 23.

*Glunt*, 123 F.Supp.2d 847, is informative. There, the plaintiff alleged, *inter alia*, that her employer violated the FMLA by demoting her "based upon her pregnancy and her intent to take maternity leave," and the employer and its parent company moved for summary judgment on that claim. *Id.* at 851–52. Applying the *McDonnell Douglas* framework, the Court determined that the plaintiff sufficiently established a *prima facie* case to survive the defendants' motion for summary judgment because it was undisputed that she took FMLA leave and was adversely affected by an employment decision, and the "close proximity" of her demotion to her scheduled maternity leave one month later was "sufficient to infer a causal connection between the two events." *Id.* at 871–72. The Court further determined that the defendants provided a "legitimate nondiscriminatory reason" for the plaintiff's demotion when they cited "poor job performance on two events." *Id.* at 872. The

Court denied the summary judgment motion, concluding, *id.*:

> Plaintiff has produced sufficient evidence to create a genuine issue for trial as to whether her alleged poor job performance is just a pretext for discrimination. Considering the conflicting performance appraisals, her supervisor's sudden change in demeanor, the insulting comments of her supervisors regarding her pregnancy, and restrictions on her duties following the announcement of her pregnancy, a reasonable jury could render a verdict in Plaintiff's favor.

Here, also, it is undisputed that Plaintiff took FMLA leave, a "protected activity"; and Baltimore County took "an adverse employment action" by not promoting Plaintiff. Further, due to the undisputed frequency of Plaintiff's FMLA leave, he has shown that Baltimore County's decisions not to promote him were in temporal proximity to at least some of his absences. Plaintiff offers his FMLA leave requests, denials, and approvals; his performance evaluations, which were positive overall but included recommendations that Plaintiff take less unscheduled leave; and performance evaluations of employees promoted when Plaintiff was not, showing little, if any, use of leave. *See* Pl.'s Mem. Ex. 29–36, 60–66. Taken as a whole, Plaintiff offers sufficient evidence for a jury reasonably to find that Baltimore County did not promote him because of the extent of his absences, the majority of which were for FMLA leave.

Therefore, Baltimore County, as the employer, must show that it had a legitimate reason for not promoting Plaintiff. *See Wright*, 319 Fed.Appx. at 233. Defendants meet that burden by producing O'Neill's May 21, 2009 deposition, in which O'Neill identified, albeit in vague, unparticularized language, Plaintiff's deficiencies, such as lack of experience and

lack of knowledge. Defs.' Opp'n & Reply Ex. 4. *Cf. Glunt,* 123 F.Supp.2d at 872 ("poor job performance qualifies as a legitimate nondiscriminatory reason to demote an employee").

▆ Therefore, Plaintiff must show that Baltimore County's reasons were pretextual. To prove pretext, Plaintiff need not prove that he was better qualified than those who were promoted. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 144, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (stating, in age discrimination case in which plaintiff-employee was not promoted, while younger employees were, that "the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence'"; and concluding that plaintiff-employee "made a substantial showing that [employer's] explanation was false" based on evidence employee presented about his own job performance, without discussing any evidence concerning employee's qualifications as compared to the qualifications of those who were promoted). Here, Plaintiff offers evidence that those who were promoted had better attendance than he. *See* Pl.'s Mem. Ex. 29, 60–66. He also offers evidence that his

unscheduled leave, which included FMLA leave, garnered attention and negative remarks on his performance evaluations, which were otherwise positive.[8] *See* Pl.'s Mem. Ex. 29. From that, a jury reasonably could infer that Defendants considered Plaintiff's sick leave, including FMLA leave, in their decision not to promote Plaintiff, and the reasons given by Defendant O'Neill, years later and after the commencement of this action, were pretextual. Therefore, Defendants' Motion for Summary Judgment on Plaintiff's retaliation claim is DENIED IN PART, as it pertains to all non-time barred incidents (after December 1, 2005).

### E. FIRST AND FOURTEENTH AMENDMENTS, 42 U.S.C. § 1983, AND ARTICLE 40 OF THE MARYLAND DECLARATION OF RIGHTS

According to Defendants, Plaintiff "was speaking as an employee, not as a private citizen engaging in public discourse," and "Plaintiff's speech concerns an internal office grievance, and certainly does not rise to the level of a 'public concern' so as to trigger First Amendment" rights. Defs.' Mem. 29. Further, they insist that Plaintiff's "Article 40 claim is treated like his First Amendment claim."[9] *Id.* at 29 n. 11.

---

8. Plaintiff also claims that Baltimore County did not distinguish between FMLA leave and other sick leave, but his supporting exhibit belies this allegation. Plaintiff refers to a page of Leave Codes that does not include a code for FMLA leave. But, the page states: "PRESS ENTER TO VIEW ... FAMILY AND MEDICAL LEAVE ACT CODES ON NEXT SCREENS." Pl.'s Reply Ex. 9. In addition, he argues that while Defendants "seem to indicate that FMLA is generally denoted by 'Y'[,][t]hat coding ... does not appear to be in use on plaintiff's payroll records." Pl.'s Reply 7. To the contrary, Code "Y" appears throughout the payroll records that Plaintiff attached to his filings. *E.g.,* Pl.'s Mem. Ex. 2–4; Pl.'s Reply Ex. 36E–F. Therefore, it is evident that Baltimore County had a distinct

code for FMLA leave and used it in Plaintiff's records.

9. Plaintiffs do not contest this assertion. Indeed, "the freedoms protected by Article 40 of the Maryland Declaration of Rights have been interpreted by [the Maryland Court of Appeals] to be co-extensive with the freedoms protected by the First Amendment" and therefore claims under Article 40 "may be resolved by applying United States Supreme Court case law interpreting the First Amendment." *Jakanna Woodworks, Inc. v. Montgomery County,* 344 Md. 584, 689 A.2d 65, 70 (1997); *see Freedman v. State,* 233 Md. 498, 197 A.2d 232, 235–36 (1964) ("The guaranty of freedom of speech and press ordained in Art. 40 would appear to be, in legal effect, substantially similar to that enunciated in the

In any event, Defendants assert that O'Neill and Swain have qualified immunity because case precedent does not make clear that their actions violated Plaintiff's clearly-established First Amendment rights. *Id.* at 29 n. 12.

Plaintiff contends that his complaints to the Department of Labor ("DOL") constituted speech that was "a matter of public concern" because it addressed "the ability of Baltimore County employees to take FMLA leave without being afraid that they will be disciplined for it," and it addressed Defendants' "policy toward its employee workforce of over 400 people." Pl.'s Mem. 42. In addition, he asserts that the "qualified immunity test" provides that a government official does not have qualified immunity if " '(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was a "clearly established" right "of which a reasonable person would have known." ' " *Id.* at 43 (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir.2006)). Plaintiff argues that Defendants O'Neill and Swain [10] do not have qualified immunity because the claim concerns First Amendment rights, *id.* at 45, and "[t]he right of a public employee to be free from retaliation for protected speech is 'clearly established,' " *id.* at 44.

■■■ To state a claim of retaliation based on the First Amendment and 42 U.S.C. § 1983, a plaintiff must show (1) an expression involving a matter of public concern; (2) a retaliatory action that "deprived him of some valuable benefit"; and (3) a causal relationship between the two. *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir.1990); *Givhan v. W. Line Consol. Sch. Dist.*, 439

U.S. 410, 416–17, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

■■■ Defendants challenge whether Plaintiff's speech was a matter of public concern, such that it fell within the ambit of First Amendment protection. *See Connick v. Myers*, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "[S]peech on public issues occupies the ' "highest rung of the hierarchy of First Amendment values," ' and is entitled to special protection." *Id.* at 145, 103 S.Ct. 1684 (quoting *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 913, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (quoting *Carey v. Brown*, 447 U.S. 455, 467, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980))). Further, "First Amendment protection applies when a public employee arranges to communicate privately with his employer rather than to express his views publicly." *Id.* at 146, 103 S.Ct. 1684; *see Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) (same). And, it applies regardless of "how interesting or important the subject of an employee's speech is." *Urofsky v. Gilmore*, 216 F.3d 401, 407 (4th Cir.2000).

■■■ However, to be a matter of public concern, speech must " 'involve[ ] an issue of social, political, or other interest to a community.' " *Campbell v. Galloway*, 483 F.3d 258, 267 (4th Cir.2007) (quoting *Kirby v. City of Elizabeth City*, 388 F.3d 440, 446 (4th Cir.2004)). The Fourth Circuit elaborated:

> "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are pro-

First Amendment, and it is significant that Art. 40 has been treated by this Court as in *pari materia* with the First Amendment.").

10. In his Amended Complaint, Plaintiff only lodged a First Amendment claim against Baltimore County and O'Neill, not against Swain. Therefore, Swain's liability is not at issue.

tected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." *Stroman v. Colleton County Sch. Dist.,* 981 F.2d 152, 156 (4th Cir. 1992). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684. *Campbell,* 483 F.3d at 267. The constitutional protection does not apply to speech delivered in the employee's " 'role as employee.' " *Urofsky,* 216 F.3d at 407 (quoting *Terrell v. Univ. of Tex. Sys. Police,* 792 F.2d 1360, 1362 (5th Cir.1986)). Indeed, in the Supreme Court's "decisions determining speech to be entitled to First Amendment protection the Court has emphasized the *unrelatedness* of the speech at issue to the speaker's employment duties." *Id.* (emphasis added). The protection applies "when 'the fact of employment is only tangentially and insubstantially involved in the subject matter of the public communication.' " *Id.* (quoting *Pickering v. Bd. of Educ.,* 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

 Plaintiff's DOL complaints charged that Defendants violated policies involving family and medical leave, a topic of interest to a large community. But, the complaints related to "conditions of employment" and were "more immediately concerned with the self-interest of the speaker as employee." *Stroman,* 981 F.2d at 156. Put another way, Plaintiff only identified how the violations affected him personally.[11] On February 26, 2008, he stated: "I had two instances where I was late coming to work . . . for FMLA related reasons. . . . I followed county policy. . . . I received counseling for this in December, which was put in my personnel file." Pl.'s Mem. Ex. 56. In 2006, Plaintiff claimed that "he was suspended for taking leave that is protected under the FMLA." *Id.* Ex. 57. Further, Plaintiff only requested relief that would benefit him personally, not relief that would change the Department's ways and benefit other Department employees. In 2008, with regard to the notes in his personnel filed, Plaintiff stated: "I want this removed." *Id.* Ex. 56. Therefore, Plaintiff's complaints, as personal grievances, were distinct from speech that courts have said to be of public concern. *See, e.g., Campbell,* 483 F.3d at 268–70 (noting that the plaintiff's sexual harassment complaint "included complaints about inappropriate conduct directed towards other females" and complaints "about inappropriate conduct and comments by male officers in front of suspects and witnesses, as well as inappropriate conduct and comments by male officers directed at other female employees," and

---

11. It is true that in his June 22, 2000 DOL complaint, Plaintiff arguably framed the matter as broader than a personal grievance, alleging that "Baltimore County did not have the F.M.L.A. established or posted in the County handbook until November 1998" and still had not "posted [the law] in any of [the Department] facilities." Pl.'s Mem. Ex. 58. But, the statute of limitations for a "tort action for the recovery of damages for personal injuries" applies to § 1983 claims. *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), *superseded by statute on other grounds as stated in Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004) (recognizing four-year statute of limitations under 28 U.S.C. § 1658 for claims arising from federal statutes enacted after 1990 and "whenever a post–1990 enactment creates a new right to maintain an action"). The statute of limitations for a personal injury tort action in Maryland is three years. Md.Code Ann., Cts. & Jud. Proc. § 5–101 (2006); *Singer Co., Link Simulation Sys. Div. v. Balt. Gas & Elec. Co.,* 79 Md.App. 461, 558 A.2d 419, 426 (1989) ("The time period of Section 5–101 governs negligence actions."). Therefore, the limitations period has run insofar as the claim pertains to Plaintiff's speech in 2000.

stating that sexual harassment complaints "are not *per se* matters of public concern," but on the facts before it, the plaintiff's complaint was a matter of public concern).

Moreover, Plaintiff spoke as an employee, unhappy with how the Department handled his FMLA leave. If Plaintiff were not employed by Defendant Baltimore County, he would not have made the complaints. *Cf. Pickering*, 391 U.S. at 574, 88 S.Ct. 1731 (reasoning that because teacher's statements in letter criticizing Board of Education were "only tangentially and insubstantially" related to the teacher's employment, it was "necessary to regard the teacher as the member of the general public he [sought] to be" and afford his speech protection). Plaintiff's speech was not protected by the First Amendment.[12]

Therefore, summary judgment is DENIED IN PART, as it related to Plaintiff's claims based on his free speech rights.

In summary:

1. Defendants' Motion for Summary Judgment is GRANTED regarding all Plaintiff's claims against Defendants O'Neill and Swain;

2. Defendants' Motion for Summary Judgment is GRANTED as it pertains to all incidents that occurred before December 1, 2005;

3. Defendants' Motion for Summary Judgment regarding Plaintiff's § 1983 and Article 40 free speech claims is GRANTED;

4. Defendants' remaining Motion for Summary Judgment is DENIED; and

5. Plaintiff's Motion for Partial Summary Judgment on the interference claims is DENIED.

Because this case must be tried, a telephone conference with counsel and the Court has been set for Tuesday, March 16, 2010, at 4:00 p.m. to discuss further scheduling. Plaintiff's counsel will initiate the call to counsel and chambers.

---

**12.** Because I have found that Plaintiff has failed to demonstrate a First Amendment claim, which undergirds his § 1983 and Maryland Declaration of Rights Article 40 claims, I need not reach the qualified immunity issue.